Lemire, James R., J.
This case arises from the termination of the plaintiff, Robert Stetson (“Stetson”), from his volunteer position as an auxiliary police officer for the Town of Ashland Police Department.
Stetson alleges that the defendants, Chief of Police, Roy Melnick (“Melnick”) and Town Manager, Dexter Blois (“Blois”) defamed him and terminated him without the opportunity to be heard following Stetson’s application for a private detective’s license. As a result, Stetson alleges that Melnick, as well as the Town of Ashland, the Town of Ashland Police Department, and Blois (collectively, the “Town Defendants”) are liable. Stetson’s complaint asserts eleven counts: Count I— Wrongful Termination; Count II — Violation of Civil Rights pursuant to G.L.c 11H & 1II; Count III — Denial of Procedural Due Process; Count IV — Arbitrary, Capricious, And/Or Bad Faith Termination; Count V— Intentional and Improper Interference with an Advantageous/Contractual Relationship with Employer; Count VI — Misrepresentation; Count VII— Breach of Contract; Count VIII & IX — Defamation; Count X — Witness Tampering and Threatening to Commit a Crime; Count XI — Improper Seizure of Assets. The matter is before the court on Melnick’s Motion for Summary Judgment and the Town Defendants’ Motion for Summary Judgment. For the reasons discussed below the Town Defendants’ motion is ALLOWED and Melnick’s motion is ALLOWED in part, and DENIED in part.

BACKGROUND

The plaintiff, Robert Stetson, began volunteering as an auxiliary police officer for the Town of Ashland on *472 or about April 9, 1999. Auxiliary police officers are permitted by the Town of Ashland to work paid details, but such details are not guaranteed and are not paid by the town. Stetson worked one paid detail assignment during his time as an auxiliary police officer. Stetson did not enter into an employment contract with the Town of Ashland. As an auxiliary police officer, Stetson was not a member of a union and was not subject to the union contract. The defendant Roy Melnick was hired as the Chief of Police for the Town of Ashland on or about February 1, 2000.
On or about October 22, 2002, Stetson applied to the Massachusetts State Police Certification Unit to become licensed as a Private Investigator in the Commonwealth of Massachusetts, pursuant to G.L.c. 147, §24.[2] As part of this application, Stetson submitted a document entitled “My qualifications defined.” In this document, Stetson wrote, in part, “My 3+ years working for the Ashland Police Department Internet Investigations Team constitutes being employed to do investigations (in a detective capacity).” He further stated, in part, “While ‘advising,’ I actually conducted hands on investigation (generally accepted to be detective work) to uncover evidence of criminal wrongdoing.”
State Police Trooper Michael Cooney contacted Melnick to verify Stetson’s background and application for a private detective’s license. The State Trooper asked Melnick to verify that Stetson was employed by the Town of Ashland Police Department as an investigator. Melnick told the State Trooper that Stetson did not work for the Police Department as an investigator and requested that Stetson’s application to the State Police be faxed to him. Stetson was later denied his private detective’s license.
After reviewing Stetson’s application to the State Police, Melnick suspended Stetson for five days as auxiliary police officer, and recommended his termination to Ashland Town Manager, Dexter Blois, indicating that Stetson had made false representations regarding his involvement with the internet investigations team and his experience conducting investigations. On November 14, 2002, Melnick sent a memorandum to Blois, containing a summary of the contents of Stetson’s application for a private detective’s license, excerpts from the controlling statute for granting such licenses, and a summary of the department rules that Melnick believed that Stetson had violated. In Melnick’s memorandum to Blois, he wrote, “(i]n a letter attached to this application, Mr. Stetson made false representations of his affiliation, duties, and experience as an Ashland Police Auxiliary Officer.” He continued by writing that Stetson’s statements made under oath constitute a criminal offense if the State Police chose to pursue such a charge. Blois followed Melnick’s recommendation and terminated Stetson from his position on November 14, 2002. The memorandum was placed in Stetson’s personnel file. Melnick sent another memorandum to all police department personnel on November 14, 2002, informing them that Stetson was no longer an auxiliary police officer. Stetson could then not obtain a job with any local police departments.

DISCUSSION

Summary judgment is appropriate when the summary judgment record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); DuPont v. Comm’r of Corr., 448 Mass. 389, 397 (2007). A fact is “material” if it would affect the outcome of the suit. Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is “genuine” where a reasonable finder of fact could return a verdict for the non-moving party. Flesner v. Technical Commc'ns Cow., 410 Mass. 805, 809 (1991), citing Anderson, 477 U.S. at 252. The moving party bears the initial burden of demonstrating the absence of a triable issue and that the summary judgment record entitles him to judgment as a matter of law. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002), citing Pederson v. Time, Inc., 404 Mass. 14, 17 (1989); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). The moving party may satisfy its burden by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the non-moving party has no reasonable expectation of proving an essential element of his case at trial. Flesner, 410 Mass. at 809; Kourouvacilis, 410 Mass. at 716 (adopting reasoning contained in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that “the burden on the moving party may be discharged by ‘showing’. . . that there is an absence of evidence to support the non-moving party’s case”). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trs. of the Coll. of the Holy Cross, 388 Mass. 16, 17(1983); see Simplex Techs, Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 197 (1999). If the moving party has carried its burden, and the plaintiff has not responded with specific facts to establish a genuine, triable issue, the court grants the motion for summary judgment. Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976); see Ng Bros., 436 Mass. at 644 (stating that, even where the facts are disputed, “summary judgment is still available if the party with the burden of proof at trial . . . fails to present in the summary judgment record, taking everything it says as true and drawing all reasonable inferences in its favor, sufficient facts to warrant a finding in its favor”), citing White v. Univ. of Mass. at Boston, 410 Mass. 553, 557 (1991).
*473 Stetson only opposes summary judgment by Melnick on counts II, III, VIII and IX and by the Town Defendants on counts III, VIII and IX.

I.G.L.c. 12, §111: Civil Rights (Count II)

Stetson’s claim in Count II alleges violation of the Massachusetts Civil Rights Act (“MCRA’j, which provides a private cause of action against individuals who interfere or attempt to interfere with another’s rights under either the constitution or laws of the United States or the Commonwealth. G.L.c. 12, §§11H-I. Here, Stetson alleges that Melnick employed intimidation tactics and used threats in an attempt to deter the plaintiff from filing his lawsuit against the defendants. In order to prevail on a claim under G.L.c. 12, §1II, the plaintiff must show: (1) his exercise or enjoyment of rights secured by the Constitution or laws or either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation, or coercion. Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989).
A “threat” “involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.” Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, 474 (1994) (citations omitted), cert. denied, 513 U.S. 868 (1994). “Intimidation” involves “putting in fear for the purpose of compelling or deterring conduct.” Id. (citations omitted). “Coercion” involves “the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.” Id.
Stetson argues that Melnick attempted to interfere with Stetson’s right to file a civil action by threatening to tamper with witnesses. After his termination, Stetson demanded a meeting with Melnick and Blois and for an explanation for the termination. At this meeting, Stetson alleges that Melnick specifically stated to Stetson, in the presence of Stetson’s counsel at that time, that any witness that Stetson might call to testify wouldn’t say what he thought they’d say, and those who worked under [Melniek’s] command and corroborated Stetson’s story would be disciplined for insubordination. Thus, Stetson argues that Melnick employed the use of threats and intimidation to force Stetson not to file this civil action.
In light of Stetson’s allegations of Melnick’s conduct, there are genuine issues of material fact as to whether Melnick’s actions could constitute “threats, intimidation, or coercion” in violation of the MCRA. Hence, summaiy judgment is inappropriate as to Count II.

II.Due Process (Count III)

Stetson argues that his termination from his auxiliary officer position without a hearing deprived him of a liberty interest under the Due Process Clause of the Fourteenth Amendment. While the Supreme Court has recognized that the “liberty” guaranteed by the Fourteenth Amendment “denotes not merely freedom from bodily restraint but also the right of the individual to contract [and] to engage in any of the common occupations of life,” it has also held that the denial of employment, in the absence of an entitlement to such employment, standing alone, is not sufficient to constitute a liberty interest. Bd. of Regents v. Roth, 408 U.S. 564, 572-73 (1972). Similarly, despite stigma derived from defamation by the government, reputation alone is insufficient to constitute a liberty or property interest for the purposes of the Due Process Clause of the Fourteenth Amendment. Silva v. Worden, 130 F.3d 26, 32 (1st Cir. 1997).
However, a liberty interest may exist where there is: (1) the deprivation of a tangible interest, such as employment, (2) stigma resulting from the denial of such employment based on the applicant’s purported dishonesty, immorality, or propensity for future criminality, and (3) the applicant is foreclosed, not merely from a single position, but from a significant number of employment opportunities in his field. Cronin v. O’Leary, 13 Mass. L. Rptr. 405 (Suffolk Super.Ct. Nov. 20, 2006) (Gants, J.).
Citing Cronin, Stetson argues that a liberty interest exists in this instance. However, Stetson is unable to establish that he has a tangible interest in his volunteer position as an auxiliary police officer. The record reflects that Stetson did not enter into an employment contract with the Town of Ashland, nor was a member of a union subject to the union contract. Furthermore, he was not compensated for his services as an auxiliary police officer for the Town of Ashland. As such, no liberty interest exists here, and summary judgment is allowed as to Count III with respect to both Melnick and the Town Defendants.

III.Defamation (Counts VIII & IX)

In Counts VIII and IX, Stetson alleges that Melnick defamed him in his memorandum to Blois, which was ultimately placed in his personnel file. Melnick’s letters stated that Stetson ‘"made false representations" in his private detective’s application under oath, and that this would “constitute a criminal offense if the State Police chose to pursue such a charge.”
A statement is defamatory if it is “reasonably susceptible of a defamatory meaning.” Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635-36 (1996). To withstand a motion for summaiyjudgment for defamation, a plaintiff must prove that: (a) the defendant made a statement, concerning the plaintiff, to a third party; (b) the statement could damage the plaintiffs reputation in the community; (c) the defendant was at fault in making the statement; and (d) the statement either caused the plaintiff economic loss or is actionable without proof of economic loss. Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003). The level of fault required varies between negligence (for statements concerning private persons) and actual *474 malice (for statements concerning public officials and public figures). Id. at 630. Statements that charge the plaintiff with a crime are actionable without proof of economic loss. Id.
Melnick’s statement to Blois, a third party, that Stetson had made misrepresentations on his application and committed perjury could damage Stetson’s reputation in the community, and thus is reasonably susceptible for a defamatory meaning. Because this statement charges Stetson with the crime of perjury, it is actionable without proof of economic loss.

a. Stetson’s status as a public official

Next, we must determine whether the plaintiff can prove that the defendant was at fault in making his statement. Where relevant facts are not disputed, it is for the judge to determine whether a plaintiff is a public or private figure, for purposes of a defamation action. Shaari v. Harvard Student Agencies, Inc., 427 Mass. 129, 134 (1998). Where the plaintiff is a public figure, the plaintiff must prove that the defendant published the defamatory statement with “actual malice.’’ New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). “Actual malice” exists where the defendant publishes a defamatory communication with knowledge that it was false or with reckless disregard for whether or not it was false. McAvoy v. Shufrin, 401 Mass. 593, 596 (1988). The actual malice inquiry “is a subjective one as to the defendant’s attitude toward the truth or falsity of the statement rather than the defendant’s attitude toward the plaintiff.” Rotkiewicz v. Sadowsky, 431 Mass. 748, 754 (2000). “Reckless disregard” requires “sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.” Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867 (1975).
“Because of the broad powers vested in police officers and the great potential for abuse of those powers, as well as police officers’ high visibility within and impact on a community,” police officers, including patrol-level police officers, are “public officials” for the purposes of defamation. Rotkiewicz at 752. A major factor in determining whether a government employee is a public official for purposes of defamation is “whether the employee’s position is one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy.” Id. at 753. Other considerations as to public official status include “the government employee’s ability to set policy guidelines that are of importance to public debate; the impact of the government position on everyday life; the potential for social harm from abuse of the government position; as well as the employee’s access to the press.” Id. (citations omitted).
Melnick argues that Stetson is a public figure, and must thus show actual malice to succeed on his claim for defamation. While it is undisputed here that Stetson was not a police officer, but an auxiliary police officer, the court follows the reasoning in Rotkiewicz and holds that Stetson is a public figure for the purposes of defamation. The uncontested facts indicate that the job duties of Ashland auxiliary officers included directing traffic, operating dispatch, accompanying other officers on patrol, and performing detail work when available. As an auxiliary police officer, Stetson had the same responsibility to further the preservation of law and order in the community as all law enforcement officials who necessarily exercise State power in the performance of their duties. Furthermore, Stetson’s position as an auxiliary police officer is similar to that of a patrol officer, where “abuse of the office can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss,” even though it may be “low on the totem pole” and the officer “does not set policy for the department.” Id. at 753-54. Hence, due to the potential social harm that would arise from abuse of the auxiliary police office, the plaintiff here is a public official for the purposes of defamation and must show actual malice on the part of the defendant.
“Although the existence of actual malice raises a state-of-mind issue, summary judgment is still an appropriate method for resolving claims when a plaintiff has failed to present evidence from which the motion judge could draw an inference of actual malice.” Elm Med. Lab., Inc. v. RKO Gen., Inc., 403 Mass 779, 786, citing Godbout v. Cousens, 396 Mass. 254, 258-59 (1985). In this case, Stetson has failed to show evidence that Melnick acted with actual malice in making his statement. There is no indication that Melnick published the statement with knowledge that it was false, or with reckless disregard as to whether it was false or not. Stetson asserts that Melnick did not take reasonable steps in ascertaining the truth of his statements, which could have been done through a hearing after Stetson’s termination. However, given Melnick’s role as Chief of Police and involvement in the Ashland Investigations Team, there is no indication that he entertained serious doubts as to the truth of his statement.
Because plaintiff here has failed to provide evidence that Melnick acted with actual malice, summary judgment is allowed for both Melnick and the Town Defendants as to Counts VIII and IX.

b. Conditional privilege

Furthermore, even if Stetson were not a public official for the purposes of defamation, summary judgment would be appropriate in this instance because Melnick’s statements were protected by a conditional privilege. Under Massachusetts law, an employer has a conditional privilege to disclose defamatory information concerning an employee when publication is reasonably necessary to serve employer’s legitimate interest in the fitness of an employee to perform his or *475 her job. Bratt v. Int’l Bus. Machines Corp., 392 Mass. 508, 512-13 (1984). A qualified or conditional privilege also exists “where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it.” Foley v. Polaroid Corp., 400 Mass. 82, 95 (1987). If the publication furthers a legitimate business interest of the employer, and the publication was not excessive or reckless, the employer enjoys a conditional privilege to make such statements. See Bratt at 512, 514-15.
A defendant in a defamation case may lose a conditional privilege to publish defamatory material by proof of actual malice, or “by unnecessary, unreasonable or excessive publication,” for which the plaintiff must prove that the defendant published the defamatory information recklessly. Id. at 516 (“loss of a defendant’s conditional privilege in a defamation action through ‘unnecessary, unreasonable or excessive publication’ requires proof that the defendant acted recklessly”); see also Galvin v. New York, N.H. & H.R. Co., 341 Mass. 293, 297 (1960) (“proof of actual malice will constitute an abuse of [conditional] privilege”). Once an employer’s conditional privilege is recognized, the burden shifts to the employee to show that the employer abused this privilege. Foley, 400 Mass. at 95.
In the present case, Melnick made the allegedly defamatory statement in his letter to Town Manager Blois in his official capacity as Chief of Police, as part of Melnick’s recommendation for Stetson’s termination from his auxiliary officer position. As Chief of Police, Melnick was required to evaluate Stetson’s performance as an auxiliary officer. Because Melnick’s statement was made in connection with Stetson’s termination, as providing a reason for this termination, it is a publication which furthers a legitimate business interest of the employer. Thus, Melnick enjoys a conditional privilege here, and the burden shifts to Stetson to provide evidence that Melnick abused this privilege. Stetson asserts that Melnick did not hold a termination hearing for Stetson, and was thus reckless in failing to verify the truth of his statement. However, due to Melnick’s supervisory role as Chief of Police, by which he believed himself to have actual knowledge of Stetson’s involvement as an auxiliary police officer, there is no indication that Stetson abused his privilege by publishing his statement recklessly.
Because Stetson has failed to prove actual malice, or alternatively prove that Melnick abused his conditional privilege, summary judgment is allowed as to Counts VIII & IX as to all defendants.

ORDER

For the preceding reasons, the Town Defendant’s Motion for Summary Judgment is ALLOWED as to all counts.
Melnick’s Motion for Summary Judgment is ALLOWED in part, and DENIED in part as follows: Summary Judgment is ALLOWED as to Counts I, III, IV, V, VI, VII, VIII, IX, X, and XI. Summary Judgment is DENIED as to Count II.

Massachusetts General Laws Chapter 147, Section 24, states in relevant part, that an applicant “shall have been regularly employed for not less than three years as a detective doing investigative work.”