DAVID R. MCNAMEE *vs.* RICHARD B. JENKINS, JR., & another.[1]

No. 98-P-2204.

Middlesex. November 7, 2000. - September 11, 2001.

Present: BROWN, GREENBERG, & GELINAS, JJ.

*Police Officer. Municipal Corporations,* Police. *Libel and Slander. Malice. Practice, Civil,* Summary judgment. *Contract,* Interference with contractual relations.

In an action brought by a police sergeant for defamation against two police officers who were under the plaintiff's supervision, the judge erred in allowing summary judgment for one of the defendants, where there was a sufficient showing from which it could be found that the defendant acted with actual malice [505-507]; however, the judge correctly allowed summary judgment for the other defendant, where the plaintiff failed to show that this defendant's allegedly defamatory words were "of and concerning the plaintiff" [507-508].

In an action brought by a police sergeant for intentional interference with an advantageous relationship against two police officers who were under the plaintiff's supervision, the judge erred in allowing summary judgment for one of the defendants, where, based on the summary judgment materials, the plaintiff had a reasonable expectation of proving, as to that defendant, all four elements required to establish interference with advantageous business relations [508-509]; however, the judge correctly allowed summary judgment for the second defendant, where the plaintiff offered no evidence to show malice on the part of that defendant except that her statement supported the position of the first defendant, and no facts about the relationship between the plaintiff and the second defendant, other than that she was under the supervision of the plaintiff [509].

CIVIL ACTION commenced in the Superior Court Department on November 16, 1994.

The case was heard by *Isaac Borenstein,* J., on motions for summary judgment.

*Donald E. McNamee* for the plaintiff.

*Peter Antell* (*Robert Feigin* with him) for the defendants.

---

[1]Lisa M. Chinal.

BROWN, J. This is an appeal from summary judgments granted in favor of the defendants in an action for defamation and intentional interference with an advantageous relationship. The plaintiff, David McNamee, is a sergeant with the Arlington police department, and the defendants, Richard Jenkins and Lisa Chinal, are patrol officers who were under the plaintiff's supervision.

A brief sketch of the factual background is necessary for an understanding of the underlying controversy. On November 7, 1991, the Arlington Patrolman's Betterment Association filed a grievance on behalf of Officer Jenkins for racial discrimination. In the course of the investigation, both Officers Jenkins and Chinal were instructed by the director of police services ("director") to submit statements detailing the alleged wrongful conduct. The gist of the plaintiff's complaint is that certain facts alleged in those statements, taken together, defamed him, and as a result he was transferred to another shift and suffered a loss in salary.

In his affidavit, dated November 19, 1991, Officer Jenkins alleged that on November 2, 1991, Sergeant McNamee uttered a racial slur directed at Officer Jenkins while in the police garage area.[2] There were no witnesses to this incident, and Sergeant McNamee denied the allegations. Officer Jenkins also alleged that Sergeant McNamee filed a false report concerning an incident involving Officer Jenkins in his official capacity as a police officer.[3] Sergeant McNamee's allegedly false report stated that Officer Jenkins's cruiser was parked in an inappropriate location while on patrol on September 21, 1991. Officer Jenkins, in his affidavit, asserted that he was in the appropriate location.

In her affidavit, dated November 21, 1991, Officer Chinal related her observation of the location of Officer Jenkins's cruiser on September 21, 1991, while she was on duty. Officer Chinal did not assert that Sergeant McNamee filed a false report,

---

[2]Officer Jenkins alleges that Sergeant McNamee muttered, "f-ing gooks." Officer Jenkins is Japanese-American.

[3]The filing of a false police report is a misdemeanor under G. L. c. 268, § 6A, and the "[i]mputation of criminal conduct is defamatory per se." See *McAvoy* v. *Shufrin*, 401 Mass. 593, 597-598 (1988).

nor did she reference his report. The plaintiff argues that Officer Chinal's report contradicted his own, and as such Officer Chinal impliedly accused him of filing a false police report.

Upon investigation of Officer Jenkins's grievance, the town's director of labor relations determined that Officer Jenkins did not meet his burden of proving that the discrimination had taken place. Officer Jenkins then filed an action in Superior Court, seeking to enjoin the town from scheduling him to work under McNamee's supervision "pending [Jenkins's] pursuit of remedies available with appropriate State and Federal agencies."[4] That action became moot when in January 1992, the director caused McNamee to be transferred from a night shift to a day shift, where he no longer supervised the defendants. As a result of the transfer he no longer received the eight percent night differential in salary and faced a reduction in certain other benefits.[5]

A judge of the Superior Court granted summary judgment for both defendants on the basis that the plaintiff had no reasonable expectation of proving an essential element of his case.[6] See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991); *Alba* v. *Sampson*, 44 Mass. App. Ct. 311, 312 (1998). The judge found that there was no evidence of malice and insufficient evidence that the defendants interfered with the plaintiff's business relationship through improper motive or means.[7] We affirm in part and reverse in part.

1. *Defamation.*

Police officers are "public officials" for the purposes of defamation, see *Rotkiewicz* v. *Sadowsky*, 431 Mass. 748, 752 (2000), and the plaintiff "may not recover damages for defama-

---

[4]The plaintiff was not a party to the action against the town.

[5]These benefits included opportunities to work occasional day assignments for extra pay.

[6]In his original complaint, the plaintiff included certain allegations made by Officer Jenkins against Sergeant McNamee that appeared in the Arlington Advocate newspaper. However, we do not address this, as it is unsupported in the record and was not raised on appeal.

[7]Both defendants also brought counterclaims in this action against the plaintiff and the town of Arlington, alleging harassment, employment discrimination on the basis of race and sex, and retaliation. Summary judgment was granted for plaintiffs McNamee and the town by a different judge. The defendants have not pursued an appeal in this court from that judgment.

tion related to his [ ] public office unless [he] proves by clear and convincing evidence that the defendant made the false statement with actual malice." *Id.* at 755, citing *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279-80 (1964). In the context of defamation, actual malice means that the "defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false." See *Rotkiewicz* v. *Sadowsky*, 431 Mass. at 755, quoting from *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 867 (1975).

While summary judgment is favored in defamation cases, it is sometimes inappropriate where there exist contested facts as to actual malice, which involves a determination of the defendant's state of mind. See *Godbout* v. *Cousens*, 396 Mass. 254, 258 (1985). "The inquiry is a subjective one as to the defendant's attitude toward the truth or falsity of the statement rather than the defendant's attitude toward the plaintiff." *Rotkiewicz* v. *Sadowsky, supra.* For reckless disregard there must be evidence that the defendant entertained serious doubts as to the truth of the publication. See *Tosti* v. *Ayik*, 394 Mass. 482, 491 (1985).

(a) *Defendant Jenkins.*

Jenkins claimed that McNamee made a racial slur. McNamee denies it and asserts that, because Jenkins made the allegation with knowledge that it was false, the actual malice requirement is satisfied. Both McNamee and Jenkins submitted affidavits attesting to the truth of their statements. If McNamee in fact did not make the statement, the circumstances of this case would permit the jury to infer Jenkins's knowledge of falsity from proof of falsity itself. It, therefore, is appropriate for a trier of fact, presented with a question of credibility on the issue of falsity, to determine whether to believe one party or another. See *McAvoy* v. *Shufrin*, 401 Mass. 593, 597-598 & n.4 (1988) (where plaintiff claimed defendant threatened him and defendant denied it). See also *Tosti* v. *Ayik*, 394 Mass. at 494-495.

The plaintiff also claims Jenkins defamed him by alleging that McNamee made a false report.[8] Once again both McNamee

---

[8]Because this is defamatory per se, see note 3, *supra*, the burden is ordinarily on the defendant to prove the truth of the statement as an affirmative defense. See *McAvoy* v. *Shufrin*, 401 Mass. at 597, citing *Maloof* v. *Post*

and Jenkins submitted affidavits attesting to the appropriateness of Officer Jenkins's location. Viewing the summary judgment materials in a light most favorable to the nonmoving party (here, the plaintiff), there has been a sufficient showing from which a fact finder could find that the defendant acted with actual malice. The plaintiff, as defendant Jenkins's supervisor, had written several reports concerning deficiencies in Jenkins's job performance. Also, just prior to the submission of Jenkins's affidavit, a work-related dispute arose between McNamee and Jenkins. Therefore, based on the materials in the summary judgment record, if a jury concluded that Jenkins's allegations were false, they permissibly could infer malice. "In order to determine the defendant's state of mind, the jury are entitled to draw inferences from the objective evidence." *Tosti* v. *Ayik*, 394 Mass. at 492.

(b) *Defendant Chinal.*

Chinal did not assert that Sergeant McNamee filed a false report, or even refer to his report. The plaintiff, by focusing on those portions of her report that contradicted his own version, argues that she impliedly accused him of filing a false report. This argument is of no avail, as we believe no such implication permissibly can be drawn.

The plaintiff must show that the allegedly defamatory words were "of and concerning the plaintiff." See *Godbout* v. *Cousens*, 396 Mass. at 263, quoting from *New England Tractor-Trailor Training of Conn.* v. *Globe Newspaper Co.*, 395 Mass. 471, 474 (1985); *McAvoy* v. *Shufrin*, 401 Mass. at 597. In truth, the statements made by Chinal that conflict with the plaintiff's statements are not of and concerning the plaintiff, but are about her observations of and interaction with Officer Jenkins. Although defendant Chinal's report was written in the course of investigating Jenkins's claims against McNamee and may have been used to support his position, it was not defamatory. Her statements do not imply or insinuate that the plaintiff filed a false report. Any incongruence between the two reports could be explained by the fact that they did not observe Officer Jenkins at precisely the same time, or by a mistake or misrecollec-

*Pub. Co.*, 306 Mass. 279, 280 (1940). Nonetheless, because the plaintiff is a "public official," he still must prove actual malice to prevail.

tion by either McNamee or Chinal.[9] Such writing does not tend to injure the plaintiff's reputation or discredit him. See *Mabardi v. Boston Herald-Traveler Corp.*, 347 Mass. 411, 413 (1964), quoting from *Muchnick v. Post Publishing Co.*, 332 Mass. 304, 305-306 (1955). Summary judgment in favor of defendant Chinal was correctly granted.

2. *Interference with advantageous relationship.*

There are four elements required to establish interference with advantageous business relations: (1) the plaintiff has a business relationship for economic benefit with a third party, (2) the defendants knew of that relationship, (3) the defendants interfered with that relationship through improper motive or means, and (4) the plaintiff's loss of the advantage resulted directly from the defendants' conduct. See *Kurker v. Hill*, 44 Mass. App. Ct. 184, 191 (1998).

(a) *Defendant Jenkins.*

Based on the summary judgment materials, the plaintiff has a reasonable expectation of proving all four elements as to defendant Jenkins. There is evidence that the plaintiff's position as a sergeant on the night shift was advantageous in light of the salary differential, and that Jenkins knew of that relationship. The defendants' argument that the plaintiff's assignment on the night shift was not a contractual right is without merit.[10] It is not necessary that the business relationship be one to which the plaintiff is contractually entitled. See, e.g., *Shafir v. Steele*, 431 Mass. 365, 370 n.10 (2000). The nature of the relationship, for purposes of the defendants' interference, is not affected by the discretion of a third party. The plaintiff had a reasonable expectation that the director's discretion would not be wrongly influenced by an outside party.

As to the third element, because the defendants' statements were made in the course of an established grievance procedure, proper means were used. Therefore the plaintiff must show that

[9]In any event, McNamee's affidavit cannot be seen as creating any issue of fact respecting Chinal's version of the facts as, at least as to her, McNamee's allegations are inadmissible and not made on personal knowledge. McNamee cannot speak to where Officer Chinal was or what she observed.

[10]The argument is that, since the director of police services has discretion in assigning personnel, G. L. c. 41, § 97A, the plaintiff had no reasonable expectation of staying on the night shift or receiving the salary differential.

the defendants' statements were made with improper motive, namely with malice. See *Weber* v. *Community Teamwork, Inc.*, 434 Mass. 761, 781-782 (2001). Here, there is sufficient evidence in the record from which a fact finder could infer malice. For example, a jury could conclude that, on a number of occasions, Officer Jenkins had received performance counseling from his police captain, and that when counseled, Jenkins opined that various sergeants were "picking on him." Additionally, a jury could have found that Jenkins harbored resentment toward the plaintiff due to several incidents where the plaintiff, acting as Jenkins's supervisor, had noted and commented on Jenkins's alleged performance deficiencies. Needless to say, we express no opinion on the credibility of such evidence.

The final element of the plaintiff's claim, whether the plaintiff's loss of advantage was the direct result of Jenkins's interference, also should be determined by the fact-finder. There is evidence in the record that McNamee's transfer was directly related to Jenkins's accusations of racial discrimination. Jenkins argues that the plaintiff chose the day shift over another night shift, where he would have retained the salary differential and any benefits. However, viewing the evidence in a light most favorable to the plaintiff, there is support for a finding that there effectively was no other choice. Where the evidence conflicts, it is for a jury to determine what to believe. See *McAvoy* v. *Shufrin*, 401 Mass. at 599-600. The judgment is accordingly reversed as to defendant Jenkins, and remanded to the Superior Court for further proceedings.

(b) *Defendant Chinal.*

The plaintiff has offered no evidence to show malice on the part of Chinal except that her statement was supportive of Jenkins's position as to his location on September 21, 1991. The summary judgment material is silent as to any facts about the relationship between McNamee and Chinal, other than that she was under his supervision. Summary judgment for defendant Chinal in this regard was correctly entered.

The judgment is affirmed as to Chinal and reversed as to Jenkins.

*So ordered.*