DONALD THOMAS SCHOLZ & another[1] *vs.* MICKI DELP.

No. 12-P-450.

Suffolk. December 6, 2012. - May 14, 2013.

Present: BERRY, FECTEAU, & CARHART, JJ.

Further appellate review granted, 466 Mass. 1103 (2013).

*Libel and Slander. Practice, Civil,* Summary judgment.

In a civil action alleging defamation against the defendant, the judge erred in
granting summary judgment in favor of the defendant, where genuine is-
sues of material fact existed whether the defendant's statements in a
newspaper article had a defamatory connotation attributable to the defend-
ant rather than the writers of the article [593-595], whether the defendant's
statements were "of and concerning" the plaintiff [595-596], and whether
the defendant was at fault for making the statements [596-597].

CIVIL ACTIONS commenced in the Superior Court Department
on October 12, 2007, and March 11, 2010.

After consolidation, the case was heard by *John C. Cratsley,*
J., on a motion for summary judgment.

*Nicholas B. Carter* (*Edward Foye* with him) for the plaintiff.
*Michael S. Day* for the defendant.

CARHART, J. The plaintiffs appeal from the entry of summary
judgment for the defendant. Because we discern genuine issues
of material fact, which must be resolved by the fact finder, we
reverse.

*Background.* The plaintiff,[2] Donald Thomas Scholz, brought
a claim of defamation against the defendant Micki Delp (Micki),
the ex-wife of Brad Delp (Brad). In order to give context to
the claim, a brief history of the parties' relationship is necessary.
In the mid-1970s, Scholz and Brad founded the rock group

[1] DTS Charitable Foundation, Inc.

[2] The claims by DTS Charitable Foundation, Inc. were dismissed by the
judge. Although it filed a notice of appeal, and is a nominal party to this appeal,
it offers no argument on any of the claims that were dismissed.

"BOSTON." Over the next several years, the group, which included Sib Hashian and Barry Goudreau, enjoyed enormous commercial success. Eventually, as is common in the industry, the band suffered a fractious break-up. Goudreau quit the band in 1981 and Hashian quit later in the 1980s. Thereafter, Scholz kept the name of the band and continued touring without the original members, aside from Brad. During this time, Brad maintained a professional relationship with Scholz, while continuing to maintain friendships with the other members of the original band, who were estranged from Scholz.

Micki and Brad were married for sixteen years. The marriage ended in divorce in 1996. The two rarely saw each other after the divorce, but maintained contact about matters regarding their children. They last spoke on February 28, 2007. On March 9, 2007, Brad committed suicide. He left behind several suicide notes, including one to Micki.

In her affidavit, Gail Parenteau, the publicist for "BOSTON and its principal musician [Scholz]," states that on March 14, 2007, she received a telephone call from Micki. During that telephone call, Micki "stated that she was out to get [Scholz]" and that she was "f——ing sick of [Scholz]." Parenteau's affidavit further alleges that on March 15, 2007, she received another telephone call from Micki, during which Micki stated that "she was going to make sure to ruin [Scholz]." Micki also told Parenteau that "Brad's death was [Scholz's] fault," and "that she was hell-bent on doing everything in her power to make sure that people knew that Brad's suicide had to do with his unhappiness with [Scholz]."

The Boston Herald published an article about Brad's death on March 15, 2007. Also on March 15, 2007, Micki spoke with Gayle Fee, a writer for the Boston Herald, about Brad's death. On March 16, 2007, the Boston Herald published an article, written by Fee and Laura Raposa, entitled, "Pal's snub made [Brad] do it: Boston rocker's ex-wife speaks." The article contained the following language:

> "Boston lead singer [Brad] was driven to despair after his longtime friend Fran Cosmo was dropped from a summer

tour, the last straw in a dysfunctional professional life that ultimately led to the sensitive frontman's suicide, [Brad's] ex-wife said.

" 'No one can possibly understand the pressures he was under,' said [Micki], the mother of [Brad's] two kids, in an exclusive interview . . . .

" 'Brad lived his life to please everyone else. He would go out of his way and hurt himself before he would hurt somebody else, and he was in such a predicament professionally that no matter what he did, a friend of his would be hurt. Rather than hurt anyone else, he would hurt himself. That's just the kind of guy he was.'

"Cosmo, who had been with Boston since the early '90s, had been 'disinvited' from the planned summer tour, [Micki] said, 'which upset Brad.'

" . . .

"According to [Micki], Brad was upset over the lingering bad feelings from the ugly breakup of the band Boston over 20 years ago. [Brad] continued to work with Scholz and Boston but also gigged with [Goudreau], Fran Sheehan and [Hashian], former members of the band who had a fierce falling out with Scholz in the early '80s.

"As a result, he was constantly caught in the middle of the warring factions. The situation was complicated by the fact that Delp's ex-wife, Micki, is the sister of Goudreau's wife, Connie.

" '[Goudreau] and [Hashian] are family and the things that were said against them hurt,' Micki said. 'Boston to Brad was a job, and he did what he was told to do. But it got to the point where he just couldn't do it anymore.' "

*Procedural history.* In October, 2007, Scholz filed a verified complaint against Micki, alleging defamation. In March, 2010, Scholz brought a defamation suit against the Boston Herald based on the March 15 and 16, 2007, articles. The two actions

were consolidated in July, 2010. Summary judgment in favor of Micki was entered on August 23, 2011, from which Scholz filed a notice of appeal.[3]

*Discussion.* In order to survive a motion for summary judgment in an action for defamation, the plaintiff must establish that genuine issues of material fact exist with regard to the following four elements: (1) the defendant made a false statement to a third party of and concerning the plaintiff; (2) the statement has a defamatory connotation; (3) "[t]he defendant was at fault in making the statement"; and (4) the plaintiff suffered a loss as a result.[4] *Ravnikar* v. *Bogojavlensky*, 438 Mass. 627, 629-630 (2003). We review a grant of summary judgment de novo, looking to the summary judgment record to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Roman* v. *Trustees of Tufts College*, 461 Mass. 707, 710-711 (2012).

1. *Defamatory connotation.* The judge concluded that the March 16, 2007, article was susceptible to a defamatory connotation; however, he attributed the defamatory connotation to the Boston Herald writers, rather than Micki:

> "While the article as a whole could be read by some to contain a defamatory meaning as to Scholz because of the possible leap or inference a reader might make that turmoil in Brad's professional life, possibly caused by Scholz, played a role in Brad's suicide, none of the statements attributed to Micki make that connection, either explicitly or implicitly. . . . [I]t is the Boston Herald writers who create the connection to Scholz and the possible implication

---

[3]At oral argument, the panel asked whether a judgment pursuant to Mass.R. Civ.P. 54(b), 365 Mass. 820 (1974), had been entered, and were told that it had. There is no indication in the Superior Court docket that a rule 54(b) motion was filed or that a rule 54(b) certification was obtained. In light of the fact that the issues have been fully briefed and argued, and in the unusual circumstances of this case, we exercise our discretion and review the merits presented. Cf. *Politano* v. *Selectmen of Nahant*, 12 Mass. App. Ct. 738, 740-741 (1981).

[4]The fourth, and last, element is not in dispute on the issue whether summary judgment should have been granted in this case.

that Scholz was responsible for the 'dysfunction' and thus, Brad's suicide."[5]

We disagree. There is a genuine dispute between Micki and the Boston Herald writers as to precisely what Micki said that resulted in the publication of the article in question, a dispute that cannot be determined as matter of law. The article was entitled, "Pal's snub made [Brad] do it: Boston rocker's ex-wife speaks." Micki was acutely aware that Scholz managed and had oversight of the band, and that this was known in the music business industry. Micki was also aware that Brad's suicide would be the subject of local and national news. Although Micki denies making some of the statements that formed the basis of the March 16, 2007, article, the Boston Herald writers contend that Micki was accurately quoted.[6] Thus, a genuine question of fact arises from this record why the article was published and what portion, if any, of the article's statements are attributable to Micki. See *Reilly* v. *Associated Press*, 59 Mass. App. Ct. 764, 773 (2003) ("A jury should be allowed to consider whether the Herald's report on that point was false"). This process was truncated when the judge determined that the Boston Herald writers, rather than Micki, were responsible for the defamatory nature.

Further, Micki concedes that the article could be construed as blaming Scholz for Brad's death. There was evidence that some BOSTON fans also construed the article in the same way. "A false statement that 'would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community,' would be considered defamatory." *Phelan* v. *May Dept. Stores Co.*, 443 Mass. 52, 56 (2004), quoting from *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 853 (1975). Considering the evidence "with an indulgence in the plaintiff's favor," *Lyons* v. *New Mass Media, Inc.*, 390 Mass. 51, 57 (1983), quoting from *National Assn. of*

---

[5]The judge determined that certain statements in the March 16, 2007, article are attributable to Micki, but that those statements "are about Brad and his mental state at the time of his suicide."

[6]Micki's statements as a whole, and in particular that "[n]o one can possibly understand the pressures he was under," imply undisclosed facts as their basis. See *Lyons* v. *Globe Newspaper Co.*, 415 Mass. 258, 262-264 (1993).

*Govt. Employees, Inc.* v. *Central Bdcst. Corp.*, 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980), we conclude that Scholz has presented sufficient evidence to demonstrate a genuine issue of material fact whether Micki is responsible for the defamatory connotation of the March 16, 2007, article.

2. *"Of and concerning."* In order to prove that Micki's statements were "of and concerning" Scholz, Scholz must demonstrate either that Micki intended her words to refer to him and that they were so understood, or that Micki's words could be reasonably interpreted to refer to him and that Micki was negligent in publishing them in such a way. See *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.*, 395 Mass. 471, 483 (1985); *Godbout* v. *Cousens*, 396 Mass. 254, 264 (1985). Regarding this element, the judge found that because the defamatory connotation of the March 16, 2007, article is attributable to the Boston Herald writers, rather than Micki, it necessarily follows that her statements are not "of and concerning" Scholz. However, a factual dispute exists whether the defamatory connotation of the article is attributable to Micki. If the jury attributes statements to Micki, the jury must also decide if those statements refer to Scholz or could reasonably be interpreted as referring to him.

Moreover, the record reveals a dispute whether Micki intended her statements in the March 16, 2007, article to be interpreted to refer to Scholz, or if she was negligent in making such statements. "The question is not so much who was aimed at, as who was hit." *New England Tractor-Trailer Training of Conn. Inc.* v. *Globe Newspaper Co.*, supra at 478, quoting from *Corrigan* v. *Bobbs-Merrill Co.*, 228 N.Y. 58, 63-64 (1920). In her statement of material facts, Micki stated, "Scholz is often referred to in the press as the 'mastermind' behind BOSTON." In her deposition, she stated, "[Scholz] is Boston." Moreover, two days prior to the article Micki told the publicist for BOSTON that she was "out to get [Scholz]" and that she was "f—-ing sick of [Scholz]." And as mentioned previously, Micki knew that Brad's suicide would garner heavy media attention. She allegedly then made the disputed statements to Fee and Raposa. "While the plaintiff need not prove that the defendant 'aimed' at the plaintiff, he or she must prove that the defendant was

negligent in writing or saying words which reasonably could be understood to 'hit' the plaintiff." *Ibid.* The backdrop of the March 16, 2007, article, along with Micki's alleged statements to Fee and Raposa, raise a reasonable question of fact whether her alleged statements intentionally refer to Scholz or whether she was negligent in making such statements in a way that could reasonably be construed as referring to Scholz.

3. *The defendant must be shown to be at fault for making the statement.* The final contested element that Scholz must prove is that Micki is at fault for making the allegedly defamatory statements. Because Scholz is a public figure, see *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 342 (1974); *DiBella* v. *Hopkins*, 403 F.3d 102, 110 (2d Cir.), cert. denied, 546 U.S. 939 (2005), he must show that the statement was "made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *LaChance* v. *Boston Herald*, 78 Mass. App. Ct. 910, 911 (2011), quoting from *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279-280 (1964). To determine whether the statement was made with malice, "[w]e must review . . . the materials put before the judge to determine whether, 'considered with an indulgence in the plaintiff's favor,' they may demonstrate to a jury to a clear and convincing degree the presence of malice on [the defendant's] part." *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 720 (1987), cert. denied, 485 U.S. 939 (1988), quoting from *Godbout* v. *Cousens*, 396 Mass. at 258-259.

Here, the judge concluded that only one statement in the article ("the last straw . . . that ultimately led to . . . suicide") could reasonably be construed as showing that Micki spoke falsely or with reckless disregard for the truth. Nevertheless, the judge concluded that the existence of ill will between the parties was insufficient to satisfy the element of malice. However, the jury, in determining whether a plaintiff has met his burden of demonstrating malice, may consider evidence of hostility. See *McNamee* v. *Jenkins*, 52 Mass. App. Ct. 503, 507 (2001), quoting from *Tosti* v. *Ayik*, 394 Mass. 482, 492 (1985) ("In order to determine the defendant's state of mind, the jury are entitled to draw inferences from the objective evidence").

In addition, Scholz alleges that Micki was the source of the

statements that formed the basis of the March 16, 2007, article. If Micki is found to have made the disputed statements, such a finding may be viewed as evidence that Micki knew that the statements were false, or that she made them with reckless disregard for the truth. See *Rotkiewicz* v. *Sadowsky*, 431 Mass. 748, 755 (2000) ("The inquiry is a subjective one as to the defendant's attitude toward the truth or falsity of the statement rather than the defendant's attitude toward the plaintiff"). See also *McNamee* v. *Jenkins*, *supra* at 506 (summary judgment is inappropriate in defamation cases where there are contested facts as to actual malice). Alternatively, the evidence may yield neither conclusion. From the record before us, we conclude that the judge's determination that Scholz could not prove the element of malice was error; in our view, such a determination should be left to the fact finder.

4. *Conclusion.* We have carefully considered the extensive summary judgment record. Viewing the evidence in the light most favorable to Scholz, we are satisfied that genuine issues of material fact exist as to each of the three elements that formed the basis for the judge's allowance of Micki's motion for summary judgment.

*Summary judgment reversed.*