Frison, Shannon, J.
The plaintiff, Donald C. Arthur, M.D. (“Arthur”), alleges that the defendants published false and defamatory statements about him on various web sites. Arthur’s First Amended Complaint asserts claims for defamation/libel (Count I) and intentional infliction of emotional distress (Count II) against Warren Goff (“Goff’), H.E. Butler, III (“Butter”), Michael Volpe (“Volpe”), and Frederick M. “Skip” Burkle, Jr. (“Burkle”).[2] The matter is before the court on motions to dismiss filed by Goff (paper #34), Butter (paper #35),[3] Volpe (paper #24),[4] and Burkle (Paper #19).[5] The defendants all seek dismissal of the complaint for lack of personal jurisdiction under Mass.R.Civ.P. 12(b)(2). Burkle also seeks dismissal of the complaint pursuant to Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[6] For the reasons that follow, the motions to dismiss of Goff, Butler, and Volpe are ALLOWED to the extent they argue that the court cannot exercise personal jurisdiction over them. The motion to dismiss of Burkle is DENIED.
BACKGROUND
Arthur is a retired Navy doctor who lives in Brewster, MA. He was in the Navy from 1974-2007. He served as the thirty-fifth Navy Surgeon General from 2004-2007 and retired from the Navy in 2007 as a Vice Admiral. After his retirement from the Navy, he served *297 as Senior Vice President and Chief Medical Officer for Main Line Health System in Bryn Mawr, PA. In September 2009, he purchased his home in Brewster. Between September 2009 and October 2011, he commuted from Brewster to Pennsylvania for three to four days at a time. Typically, he would leave Brewster on Sunday evening or Monday morning and drive back to Brewster on Thursday evening or Friday morning. He considered his home in Brewster his personal residence. Since he left Main Line Health System in 2011, he has been living in Brewster and has allegedly been unable to obtain employment in Massachusetts because of the statements made by the defendants.
In 1992, Arthur received a Ph.D. from Century University (later renamed American Century University), an online university. In 1993, Arthur received a J.D. from LaSalle University in a distance learning program. After he completed these degrees, the Navy included them in his personnel record at Arthur’s request.
In November 2005, the Navy’s Inspector General examined Arthur’s academic credentials after an individual contacted the Navy alleging that Arthur had falsified his credentials. The Inspector General concluded that Arthur had obtained the Ph.D. and J.D. from universities whose accreditations the Navy would not recognize, but determined that Arthur had done no wrong. The degrees were not removed from his personnel record.
In October 2008, the Chicago Tribune reported that the Navy had investigated Arthur’s academic credentials. In February 2009, the Philadelphia Inquirer reported the same. Arthur alleges that the defendants “began repeating the allegations of falsified academic credentials, and added many more false statements about Dr. Arthur in order to paint a false and misleading picture of him as a liar and cheater who achieved all his accomplishments, recognition, and promotions through fabrications and deception.” Arthur avers that he felt the injurious effects of the alleged libel, including lost wages, emotional distress, embarrassment, humiliation, and damage to his reputation, in Massachusetts. His specific allegations with respect to each defendant are as follows.
I.Warren Goff
Goff resides in California. On June 11, 2009, a Wikipedia page was created about Arthur. Arthur alleges that in August 2010,[7] Goff made more than 170 written changes to Arthur’s Wikipedia biography page under the pseudonym “PariahCarry” and from the IP address 98.155.75.252. Arthur alleges that many of these changes contained false and defamatory content, including that Arthur claimed to have received a master’s degree from Northeastern University that he did not receive. Further, on April 27, 2011, Goff authored an article on Examiner.com entitled, “Naval medical personnel complicit with torture at GTMO.” Arthur claims that this article contains false and defamatory statements about him.
Arthur bases the court’s exercise of jurisdiction over Goff on Goffs references to Massachusetts, specifically, that Goff stated on Wikipedia that Arthur was born and raised in Northampton, Massachusetts and that Arthur claimed to have received a master’s degree from Northeastern University in applying to medical school and on resumes throughout his naval career. Goff has submitted an affidavit stating that he was not aware at any time that Arthur lived in Massachusetts.
II. H.E. Butter, III
Butler resides in Virginia. Arthur alleges that Butler posted false and defamatoiy statements about Arthur on a web site Butler owns and operates, semmelweisssociety.net, in 2012. Arthur also claims that Butler published several links to information on Arthur’s Wikipedia biography page.
Butler makes no reference to Massachusetts in any of his postings. Thus, Arthur’s sole basis for assertion of jurisdiction over Butter is the fact that Arthur resides in Massachusetts. Butter has submitted an affidavit stating that he did not know where Arthur lived until he was served with the complaint; “(a]t last report, he was working in Pennsylvania in 2011.”
III. Michael Volpe
Volpe resides in Illinois. Arthur alleges that Volpe wrote an article entitled “The Great Pretender” about Arthur on the web site CrimeMagazine.com on March 28, 2013, in which he made several false and defamatory statements. In the article, Volpe references the allegedly fraudulently obtained master’s degree from Northeastern and also states: “According to public records, Dr. Arthur currently lives in Brewster, Massachusetts. A phone call and FAX to his residence listed were left unretumed. The FAX listed a number of questions pertaining to the various accusations raised against Dr. Arthur in this article, seeking his direct response and input.”
IV.Frederick “Skip” M. Burkle
Burkle resides in Hawaii. Volpe’s CrimeMagazine.com article contains statements that Volpe attributes to Burkle. Specifically, the article states, in relevant part:
Dr. Frederick M. “Skip” Burkle is a doctor and a physician. He is currently a senior fellow and scientist at Harvard University. He’s a Vietnam War Navy veteran, and in 1991 he was a Navy reservist, called up to serve in Operation Desert Shield.
Dr. Burkle was assigned to head up the medical base in Saudi Arabia in February 1991.
Dr. Burkle said he ran into Dr. Arthur on his first night of his assignment. In that exchange, Dr. Burkle remembers that Dr. Arthur made a comment that he (Dr. Arthur) should have been named the senior medical officer, not Dr. Burkle. Despite being *298 of lesser rank than Dr. Burkle, Dr. Arthur claimed that his doctorate and law degrees made him more qualified. Dr. Burkle said he responded by stating that assignments were posted and that he expected Arthur to be in the emergency department the next morning. That would be the last time Dr. Burkle would see Dr. Arthur.
In fact, Dr. Burkle said that to his knowledge no one on the emergency medical team ever saw Arthur perform any medical related functions the entire time they were at the trauma center. Ironically enough, Dr. Burkle said that with all the responsibilities he had and how smoothly and responsible the other medical, nursing and corpsmen staff were he never made an issue of Arthur’s absence.
Dr. Burkle said he remembered everything moving very quickly while in Saudi Arabia because the ground offensive ended so quickly. He said that during the redeployment process a number of junior officers approached him angry with Arthur’s behavior and absence and asked Dr. Burkle to court martial Arthur. Since Arthur was not in his direct chain of command, Burkle told the officers to pursue the complaint if they still felt very strongly when they returned to the United States.
I remember thinking that Arthur was a tragic case of an officer who thought more of himself than his duly and would probably not amount to much now that he had tarnished his reputation, Dr. Burkle said in an interview for this story. He now ponders how Dr. Arthur became the top medical professional in the Navy. Dr. Burkle said no one at the trauma center saw any combat action because that was not their function, as Dr. Arthur claimed he did, and found Arthur’s wearing of the combat action ribbon and claims of combat experience incredulous and an insult to those at the trauma center who did see combat action.
Dr. Burkle said that a number of corpsmen told him that Dr. Arthur was stashed away in a tent with a woman but he didn’t independently verify that rumor.
Arthur alleges that the statements about him are false and defamatory.
Arthur argues that the court should exercise jurisdiction over Burkle because he is a Visiting Scientist at Harvard University’s School of Public Health,[8] maintains an office there, has visited the school for events and special projects, and has been compensated for his services. Burkle disputes that he has an office at Harvard, instead, his position is an “academic home,” which educational institutions frequently provide to scholars, that is non-compensated. He admits that he has traveled to Massachusetts for two Harvard events, one in 2011 and one in 2013, but says he only received travel reimbursements and no compensation. He also admits that he has received compensation from Harvard as an independent contractor from May 7, 2011 to November 4, 2012, but states that other than his attendance at one meeting in Boston from October 31, 2012 to November 1, 2012, all of his work was performed in Hawaii.
DISCUSSION
Personal Jurisdiction
The court must conduct a two-fold inquiry to determine whether personal jurisdiction exists over the defendants: (1) whether jurisdiction is authorized by the long-arm statute, G.L.c. 223A, §3[9] and (2) if authorized, whether the exercise of jurisdiction under state law is consistent with due process. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Due process requires that the defendant have certain minimum contacts with the forum such that maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).
The plaintiff bears “the burden of establishing sufficient facts on which to predicate jurisdiction over the defendant.” Good Hope Indus., Inc., 373 Mass. at 3. Although the plaintiff will need to establish jurisdiction by a preponderance of the evidence at trial, all that is required at the pleadings stage is a prima facie showing. Cepeda v. Kass, 62 Mass.App.Ct. 732, 738 (2004). In considering the parties’ arguments, the court does not resolve disputed issues of fact but, rather, “consider [s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.” Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995), see Massachusetts Sch of Law v. American. Bar Ass’n, 142 F.3d 26, 34 (1st Cir. 1998) (court can consider facts put forward by defendants, to extent that they are uncontradicted); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994) (court is not required to credit conclusory allegations or draw farfetched inferences).
In evaluating whether the exercise of personal jurisdiction is warranted, the court concentrates on the quality and quantify of contacts between the potential defendant and the forum. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). “[A] defendant who has maintained a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state’s courts in respect to all matters, even those that are unrelated to the defendant’s contacts with the forum ... Short of general jurisdiction, a court still may hear a particular case if that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum.” Id. (citations omitted).
I. Specific Jurisdiction
Arthur is asking the court to assert specific jurisdiction over Goff, Butler, and Volpe. “Specific jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant’s forum-based contacts.” United Elec. Radio & Mach. Workers *299 of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir. 1992). To establish specific jurisdiction, a plaintiff must demonstrate that the Massachusetts longarm statute grants jurisdiction over the defendant and that the exercise of that jurisdiction comports with the Due Process Clause of the Fourth Amendment. Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011). As the Supreme Judicial Court has interpreted the longarm statute to extend to the limits allowed by the United States Constitution, see “Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972), the court “may sidestep the [longarm statute] inquiry and proceed directly to the constitutional analysis.” Evans Cabinet Corp. v. Kitchen Int’l, Inc., 593 F.3d 135, 146 (1st Cir. 2010); see also Digital Equipment Corp. v. AltaVista Technology, Inc., 960 F.Sup. 456, 466-67 (D.Mass. 1997) (posting tortious material on internet which is directed toward state resident by out-of-state defendant is an in-forum act for purposes of G.L.c. 223A, §3(c)).
To determine whether the assumption of specific personal jurisdiction over a defendant comports with due process, the court asks whether: (1) the claim underlying the litigation directly arises out of, or relates to, the defendant’s forum-state activities; (2) the defendant’s in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state’s laws and making the defendant’s involuntary presence before the state’s courts foreseeable; and (3) the exercise of jurisdiction, in light of the Gestalt factors, is reasonable.[10] Noonan v. Winston Co., 902 F.Sup. 298, 303 (D.Mass. 1995), citing United Elec., Radio & Mach. Workers of America, 960 F.2d at 1089.
Arthur argues that the court should exercise specific jurisdiction over Goff, Volpe, and Butler because they each posted false and defamatory information on the internet with the intent to harm Arthur in Massachusetts[11] and Massachusetts courts have a significant interest in protecting the residents of Massachusetts from such conduct.
A. Relatedness
The relatedness inquiry for tort claims focuses on whether the plaintiff has established “cause in fact (i.e., the injury would not have occurred ‘but for’ the defendant’s forum-state activity) and legal cause (i.e., the defendant’s in-state conduct gave birth to the cause of action). ” Massachusetts Sch. of Law, 142 F. 3d at 35, quoting United Elec., Radio & Mach. Workers, 960 F.2d at 1089. Here, the relatedness test is met as the plaintiff has alleged that the libel was published in Massachusetts and that his injuries occurred within Massachusetts; thus, the in-forum publication and in-forum injury are related to his defamation suit. See United States v. Swiss Am Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001) (noting that in Calder v. Jones, 465 U.S. 783, 786, 790 (1984), the Supreme Court did not need to address relatedness prong even though the only contacts between one Colder defendant and forum were that his article was published within forum and legal injury occurred within forum; both in-forum publication and in-forum injury were clearly related to plaintiffs defamation suit); Farquharson v. Metz, 2013 U.S. Dist. LEXIS 106374 (D.Mass. July 30,2013) (determining that plaintiffs defamation and emotional distress claims arose out of defendant’s Facebook posts); see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777 (1984) (tort of libel is generally held to occur wherever offending material is circulated).
B. Purposeful Availment
To establish purposeful availment, a plaintiff must show that “(1) it felt the injurious effects of a defendant’s tortious act in the forum, and (2) that the defendant’s act was calculated to cause injury to the plaintiff there.” Swiss Am Bank, Ltd., 274 F.3d at 632-33; see Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995) (if defendant’s contact with jurisdiction was “voluntary” and was of such a nature so as to make state’s exercise of jurisdiction “foreseeable,” plaintiff has established purposeful availment); see also Noonan, 902 F.Sup. at 305 (defamatory “effect” within state by itself is not sufficient to confer jurisdiction over foreign defendant, defendant must also have intended their tortious act to be felt in forum state); Shrader v. Biddinger, 633 F.3d 1235, 1241 (10th Cir. 2011) (“Posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside) . . . [I]n considering what ‘more’ could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state”).
The case of Calder v. Jones, 465 U.S. 783 (1984), is still the leading case for assessing the purposeful availment question in defamation cases. See Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998). In Colder, a California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida. Id. at 785-86. The plaintiffs libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000. Id. The Court determined that the “effects” of the defendants’ Florida conduct in California subjected the defendants to California’s jurisdiction. Id. at 789. Specifically, “[t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources and the brunt of the harm, in terms both of respondent’s emotional distress *300 and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.” Id. at 788-89. The Court also determined that the defendants’ “intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must ” ‘reasonably anticipate being haled into court there’ to answer for the truth of the statements made in their article." Id. at 789-90.
Arthur has sufficiently alleged that he felt the injury resulting from the defendants’ alleged tortious acts in Massachusetts. See Keeton, 465 U.S. at 111 (tort of libel is generally held to occur wherever offending material is circulated). Thus, the court will focus on whether Arthur has demonstrated that the individual actions of each defendant were expressly calculated to cause injury to Arthur in Massachusetts where he lives.
As to Butler and Goff, each has averred that they did not know that Arthur lived in Massachusetts. Considering that from 2009-2011, Arthur’s place of employment was in Pennsylvania and he only spent three or fours days a week in Massachusetts, and the rest in Pennsylvania, it is not unreasonable that Butler and Goff did not know that Arthur lived in Massachusetts. It follows that if Butler and Goff did not know that Arthur lived in Massachusetts, they could not have intended to cause injury to Arthur in Massachusetts. See Walden v. Fiore, 134 S.Ct. 1115, 1122(2014) (“minimum contacts” analysis looks at defendant’s contacts with forum State itself, not defendant’s contacts with persons who reside there). In addition, Goffs references to Arthur having grown up in Massachusetts and having claimed to have obtained a master’s degree from Northeastern on his application to medical school and throughout his naval career are not sufficient to show that Goff specifically intended to cause harm in Massachusetts. See Farquharson v. Metz, 2013 U.S. Dist. LEXIS 106374 (D.Mass. July 30, 2013) (rejecting argument that Facebook posts about Massachusetts resident were calculated to cause injury to plaintiff in Massachusetts because “those who would be most interested in such statements were also Massachusetts residents”).
Although the question of whether Volpe intended to cause injury in Massachusetts is a closer call because Volpe knew that Arthur lived in Massachusetts and tried to contact him there, the court determines that there is no indication that Volpe deliberately directed his message at an audience in Massachusetts or meant to harm Arthur specifically in Massachusetts as opposed to anywhere else. See Broadvoice, Inc. v. TP Innovations, LLC, 733 F.Sup.2d 219, 226 (D.Mass. 2010) (defendant’s “defamatory website was aimed at Massachusetts only in the sense that it could be accessed by Massachusetts residents (along with the rest of the world). [The defendant] did nothing to incite residents of Massachusetts — as opposed to the world at large — to take up arms against the plaintiff”); Farquharson v. Metz, 2013 U.S. Dist. LEXIS 106374 (D.Mass. July 30, 2013) (determining that defendant’s statements on Facebook were not expressly aimed at Massachusetts, where plaintiff lived, because although defendant “posted content that could be seen by any of her Facebook ‘friends,’ and perhaps by ‘friends of friends’. . . she did not take any additional steps to specifically aim content at any Massachusetts resident”). The facts of this case do not rise to the level of the cases where courts have held that the defendants intended the brunt of the injury to be felt in the forum state. Compare Calder, 465 U.S. at 789-90; Hugel v. McNell, 886 F.2d 1, 5 (1st Cir. 1989) (inferring that defendants, who allegedly advised two Washington Post reporters that Hugel, a New Hampshire resident, was engaged in illegal securities transactions, intended brunt of injury to be felt in New Hampshire where Hugel had established reputation as businessman and public servant even though statements were published in national newspaper and did not single out New Hampshire); Abiomed, Inc. v. Turnbull, 379 F.Sup.2d 90, 92, 95 (D.Mass. 2005) (defendant, an Ohio resident, intentionally directed internet postings toward Massachusetts company and audience of Massachusetts residents; “[h]aving done so, and given the unflattering nature of the postings, it can be inferred that [the defendant] intended harm to be felt in Massachusetts”); Taylor v. Taylor, Civil Action No. 2013-1222 (Middlesex Super.Ct. Sept. 27, 2013) (Krupp, J.) [31 Conn. L. Rptr. 526] (“The acts in question were purposefully directed to Massachusetts, referenced individuals resident in Massachusetts and their company based in Massachusetts, and purported to be posted by a former employee with knowledge of the plaintiffs’ business practices. The postings were plainly intended to cause harm in Massachusetts”).
C. Reasonableness
Because Arthur has not shown the necessary minimum contacts for the court to exercise jurisdiction over Goff, Butler, and Volpe, the court need not address the question of reasonableness. See United Elec., Radio & Mach. Workers of America 960 F.2d at 1091 fii.ll {Gestalt factors come into play only if first two segments of test for specific jurisdiction have been fulfilled); see also Ticketmaster-New York, Inc., 26 F.3d at 207 (relative strength or weakness of plaintiffs showing on first two elements bears upon third element).
II. General Jurisdiction
Arthur contends that the court should exercise general jurisdiction over Burkle. “General jurisdiction exists when the litigation is not directly founded on the defendant’s forum-based contacts, but the defen *301 dant has nevertheless engaged in continuous and systematic activity unrelated to the suit, in the forum state.” United Elec., Radio & Mach. Workers of America, 960 F.2d at 1088. The court considers all of the defendant’s contacts with the forum state prior to the filing of the lawsuit when analyzing general jurisdiction. Harlow v. Children’s Hosp., 432 F.3d 50, 65 (1st Cir. 2005).
A. Longarm Statute
The relevant portion of the longarm statute is G.L.c. 223A §3(d), which allows for personal jurisdiction when a defendant: “caus[es] tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth. ” Viewing the facts in a light most favorable to Arthur, the threshold requirement of§3(d), thatArthur’s in-state harm was caused by Burkle’s out-of-state act, is met. Arthur has alleged that the publication of the libelous material in Massachusetts caused him harm, including lost wages, emotional distress, embarrassment, humiliation, and damage to his reputation. Further, Burkle’s allegedly improper act, the making of defamatory statements about Arthur, was an out-of-state act that contributed to Arthur’s in-state injuries. Finally, the court concludes that Arthur has sufficiently alleged that Burkle has engaged in a persistent course of conduct with Massachusetts through his affiliation with Harvard. Specifically, Burkle is a Visiting Scientist at Harvard University’s School of Public Health and since 2011, has visited the school at least three times for meeting, events, and special projects. Further, he received compensation from Harvard as an independent contractor from 2011 to 2012.
B. Constitutional Due Process
The court therefore turns to whether these contacts are sufficient to satisfy the Constitution. To establish general jurisdiction, a plaintiff must meet two criteria. First, there must be “continuous and systematic general business contacts” between the foreign defendant and the forum. Swiss Am. Bank, Ltd., 274 F.3d at 618; see Hanson v. Denckla, 357 U.S. 235, 253 (1958) (there must be “some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws”). This test “is considerably more stringent than that applied to specific jurisdiction questions.” Swiss Am. Bank, Ltd., 274 F.3d at 619. Second, plaintiffs must show that the “exercise of jurisdiction would be reasonable.” Id. That inquiry is based on the Gestalt factors used to determine the fundamental fairness of exercising jurisdiction. See Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990). The Gestalt factors include: “(1) the defendant’s burden of appearing, (2) the forum state’s interest in adjudicating the dispute, (3) the plaintiffs interest in obtaining convenient and effective relief, (4) the judicial system’s interest in obtaining the most effective resolution of the controversy, and (5) the common interest of all sovereigns in promoting substantive social policies.” Ticketmaster-New York, Inc., 26 F.3d at 209. The factors are, however, to be weighed with healthy deference to the plaintiffs choice of a forum. Foster-Miller, Inc., 46 F.3d at 151.
The court determines that Arthur had proffered evidence at this stage showing that Burkle has engaged in “continuous and systematic general business contacts” between himself and Massachusetts through his ongoing relationship with Harvard University. Harvard’s website indicates that he is a Visiting Scientist at Harvard. Further, the allegedly defamatory article itself states that Burkle is affiliated with Harvard. Finally, since 2011, Burkle has visited the school at least three times for meeting, events, and special projects and received compensation from Harvard as an independent contractor from 2011 to 2012. Burkle has purposefully availed himself of the privilege of conducting activities within Massachusetts, specifically at Harvard, and thus could reasonably anticipate being haled into court here. See World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980) (court determines extent to which reasonable defendant by its conduct and connections with forum state would anticipate having to answer to its courts for any allegation of wrongdoing).
Further, an analysis of the Gestalt factors weigh in favor of Arthur here. Although Burkle, a Hawaii resident, would have to travel some distance to litigate in Massachusetts, he has not demonstrated any special or unusual burden and in fact has traveled to Massachusetts to visit Harvard University on occasion. See Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994) (“[T]his factor is only meaningful where a party can demonstrate some kind of special or unusual burden”). With respect to the second factor, Massachusetts has an interest in this suit since the injury occurred in Massachusetts, see Keeton, 465 U.S. at 111 (tort of libel is generally held to occur wherever offending material is circulated), and Arthur is a resident of Massachusetts. For similar reasons, under the third factor, it is more convenient for Arthur to pursue this action in Massachusetts as he is likely to get the most effective relief in this forum, where he has suffered the alleged effects from Burkle’s conduct. The administration of justice also weighs in favor of Arthur as the locus of the tort and injured party is Massachusetts. Finally, the final factor, the promotion of substantive social policy, does not favor either party. The Gestalt factors, taken together, weigh in favor of Arthur and support the assertion of jurisdiction over Burkle. [12]
III. Burkle’s 12(b)(6) Motion
Under Rule 12(b)(6), the court determines the sufficiency of the complaint based on the standard articulated in Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008); see also Bell Atl. Corp. v. Twombly, *302 550 U.S. 544, 555 (2007). That standard requires the plaintiff to set forth the grounds of his entitlement to relief by way of more than labels and conclusions. Although a complaint need not contain detailed factual allegations, those allegations “must be enough to raise a right to relief above the speculative level ...” Iannacchino, 451 Mass at 636; see also Dartmouth v. Greater New Bedford Regional Vocational Technical High Sch. Dist., 461 Mass. 366, 374 (2012) (court examines each of the plaintiffs’ theories, considering “whether the factual allegations in the complaint are sufficient, as a matter of law, to state a recognized cause of action or claim, and whether such allegations plausibly suggest an entitlement to relief’).
A communication is defamatory if it would “tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community.” Scholz v. Delp, 83 Mass.App.Ct. 590, 594 (2013) (quotations and citations omitted); Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-30 (2003) (to prove defamation, plaintiff must demonstrate that (1) defendant made false statement “of and concerning” plaintiff to third party; (2) statement could damage plaintiffs reputation in community; (3) defendant was at fault for making statement; and (4) statement caused plaintiff economic loss or is actionable without proof of economic loss); Jones v. Taibbi, 400 Mass. 786, 797 (1987) (if plaintiff is public figure he must also show that defendant acted with actual malice). The court concludes that, at this stage of the litigation, the factual allegations in Arthur’s complaint are sufficient to state a claim for defamation. See Sharratt v. Housing Innovations, Inc., 365 Mass 141, 143 (1974) (quotations and citations omitted) (court can rule as matter of law that publication is not libelous and can withdraw case from jury only when it is apparent that publication is not reasonably capable of any defamatory meaning and cannot reasonably be understood in any defamatory sense).
ORDER
For the reasons discussed above, it is hereby ORDERED that Warren Goffs Motion to Dismiss (paper #34) is ALLOWED, H.E. Butler, Ill’s “Amended Motions to Dismiss Complaint” (paper #35) is ALLOWED in that the court cannot exercise personal jurisdiction over Butler pursuant to Mass.R.Civ.P. 12(b)(2), Michael Volpe’s Motion to Dismiss (paper #24) is ALLOWED in that the court cannot exercise personal jurisdiction over Volpe pursuant to Mass.R.Civ.P. 12(b)(2), and Frederick M. “Skip” Burkle, Jr.’s Motion to Dismiss (paper #19) is DENIED.

Stephen W. Smith was voluntarily dismissed on December 26, 2013.

On August 29, 2013, Butler, acting pro se, filed an answer to the First Amended Complaint. (Paper #9.) On September 16, 2013, October 4, 2013, and October 7, 2013, Butler filed directly with the court motions to dismiss. (Paper ##11, 12, 14.) On November 6, 2013, Butler filed a motion to dismiss and motion for judgment on the pleadings. (Paper #17.) On January 31, 2014, Butler again filed a motion to dismiss and motion for judgment on the pleadings. (Paper #29.) On March 14, 2014, Butler filed an amended motion to dismiss the complaint and for judgment on the pleadings. (Paper #35.) Also, on March 14, 2014, Butler, now represented by an attorney, filed a reply memorandum in support of his motion to dismiss.

Volpe is pro se. On September 13, 2013, Volpe filed a motion “for a dismissal of Summary Judgment." (Paper #10.) On October 23,2013, the court (Troy, J.) received a letter from Volpe. (Paper #24.) Judge Troy stated that the letter would be treated as a motion to dismiss pursuant to G.L.c. 231, §59H (anti-slapp) and a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2) (lack of personal jurisdiction). On January 29, 2014, Volpe filed an amended motion to dismiss, in which, for the first time, he argues that Arthur has not produced evidence of malice. Arthur requests the court deny this motion as procedurally improper. (Paper #31.) As the court determines that it cannot assert personal jurisdiction over Volpe, the anti-slapp motion and any motion pursuant to Mass.R.Civ.P. 12(b)(6) are moot.

Arthur’s October 9, 2013, request to serve a single consolidated memorandum in opposition to the motions to dismiss of Butler, Volpe, and Burkle is allowed.

Butler also seeks dismissal of the complaint pursuant to Mass.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Further, Butler contends that the complaint should be dismissed because (1) Arthur did not allege any specific monetary damages, (2) Suffolk County is an improper venue, and (3) the matter should be removed to Federal District Court. The court will not address these arguments because, as discussed below, it cannot assert personal jurisdiction over Butler.

Number 127 of Arthur’s Amended Complaint states that the edits to Wikipedia occurred between August 6, 2010 and September 30, 2012. There are no allegations or exhibits indicating, however, that any edits were made outside of August 2010.

Arthur has submitted two printouts from harvard.edu stating that Burkle is a Visiting Scientist at Harvard.

In pertinent part, G.L.c. 223A, §3 allows for the exercise of personal jurisdiction by a court in any action arising from a defendant: “(c) causing tortious injury by an act or omission in this commonwealth,” also known as specific jurisdiction, or “(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth,” also known as general jurisdiction.

The Gestalt factors that a court will consider include: “(1) the defendant’s burden of appearing, (2) the forum state’s interest in adjudicating the dispute, (3) the plaintiffs interest in obtaining convenient and effective relief, (4) the judicial system’s interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.” Ticketmaster-New York, Inc., 26 F.3d at 209.

Arthur alleges that each defendant knew or should have known that Arthur lives in Massachusetts.

Arthur also argues that the court can exercise specific jurisdiction over Burkle. Burkle has submitted an affidavit, however, stating that he did not know that Arthur lived in Massachusetts when he communicated with Volpe.