WILLIAM F. ROTKIEWICZ, JR. *vs.* WALTER L. SADOWSKY, JR.

Franklin. February 11, 2000. - June 20, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, IRELAND, & COWIN, JJ.

*Libel and Slander. Practice, Civil,* Instructions to jury, Objection. *Malice. Emotional Distress.*

In a defamation action, the defendant adequately preserved for appellate review the issue of the status of the plaintiff as a public official. [750-752]

This court concluded that, for purposes of a defamation action, a police officer is a public official. [752-754]

At the trial of a defamation action, the jury should have been instructed that the plaintiff, a police officer, was required to prove that the defendant spoke or acted with actual malice, that is, with knowledge that the defamatory statement was false or reckless disregard of whether it was false: the matter was remanded for a new trial. [755]

In a defamation action brought by a public official, an instruction based on G. L. c. 231, § 92, would not be proper. [756]

CIVIL ACTION commenced in the Superior Court Department on December 19, 1991.

The case was tried before *Francis X. Spina,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Wendy H. Sibbison* for the defendant.

*Jack D. Curtiss* for the plaintiff.

*Robert A. Bertsche, Carol V. Rose, & William C. Newman,* for American Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

IRELAND, J. The defendant appeals from a judgment in an action for defamation and intentional infliction of emotional distress. The issue presented in this appeal is whether the plaintiff, a police officer, is a "public official" for purposes of defamation claims, and is therefore required to prove that the defendant made defamatory statements with "actual malice." See *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 279-280

(1964). We conclude that the plaintiff was a public official and therefore, because the judge did not give an instruction on the "actual malice" standard of proof, we reverse and remand for a new trial.

1. *Facts and procedural history.* The plaintiff was a trooper in the Massachusetts State police from 1983 to 1991. In 1989, the plaintiff's father was indicted on Federal charges of writing false prescriptions from his pharmacy. Both the defendant and his father provided evidence against the plaintiff's father. In July, 1990, the plaintiff's father pleaded guilty and was sentenced to house arrest for two years.

In January, 1991, the defendant wrote a letter to the plaintiff's superiors on the Massachusetts State police. In the letter, the defendant alleged that he had "been subject to a lot of harassment [by the plaintiff] . . . since [the plaintiff's] father's arrest," and that the plaintiff had "given him the finger," made his hand into the shape of a gun and pointed it into his mouth, stuck out his tongue, and mouthed the words "son of a bitch" as he drove past. The defendant also complained about two traffic stops by the plaintiff, one of which occurred on July 3, 1990, the day after the plaintiff's father had been sentenced. The defendant also claimed that two other individuals had asserted that the plaintiff had acted against them in revenge. The letter further stated that the plaintiff's father had been involved in illegal activities, that the plaintiff had received a substantial amount of money from his father, and that the plaintiff was involved in "Sunday sales" of alcohol from his father's package store.

In addition to the defendant's letter, the plaintiff's supervisors received a complaint from a Montague police officer who had been involved in the investigation of the plaintiff's father. In response to these complaints, an internal investigation commenced. The investigation concluded that the defendant's complaints were "not sustained." On the basis of the Montague police officer's complaint, however, departmental internal affairs charged the plaintiff with "conduct unbecoming an officer." The plaintiff subsequently resigned from the police force. Four months later, the plaintiff filed this suit, alleging libel and intentional infliction of emotional distress.

In 1993, while the defamation lawsuit was pending, the plaintiff was hired as a part-time police officer in Deerfield. The defendant attended a number of meetings of the Deerfield board

of selectmen (board) to express his views on the plaintiff's appointment. The essence of the defendant's comments was that he and the plaintiff had lawsuits pending against each other and that the defendant felt harassed by the plaintiff. At the meetings, the defendant wore a jacket with a bull's-eye painted on the back, which, as he explained to a local newspaper, symbolized how he felt. Later that year, the board wrote to the defendant to inform him that it was satisfied with the plaintiff's credentials and stood by the appointment. After he received the board's letter, the defendant continued to attend board meetings wearing his jacket with the bull's-eye, and he wore the jacket around the town of Deerfield. Subsequently, the plaintiff amended his complaint to add a count of slander arising from the statements made at the board meetings and the wearing of the bull's-eye jacket.

The case was tried before a jury in October, 1994. At trial, the plaintiff denied making any obscene or other harassing gestures at the defendant, but admitted "giving the finger" to the Montague police officer. The plaintiff admitted that he had received some money from his father toward the building of his house, and that his name had been on the package store's liquor license, but denied any wrongdoing or involvement in "Sunday sales" of alcohol. At the conclusion of the evidence, the judge ruled that the plaintiff was a "private individual," and thus did not instruct the jury on the actual malice standard. The jury awarded the plaintiff $81,000 for the defamation claim and $75,000 for intentional infliction of emotional distress.

On appeal, the defendant argues that the jury should have been instructed that the plaintiff was a public official and that, as such, the plaintiff was required to prove actual malice in order to recover. We granted the defendant's application for direct appellate review.

2. *Preservation of the issue.* As an initial matter, the plaintiff argues that the issue of his status as a public official is not before this court because the defendant did not preserve the issue; that is, the defendant did not object, at the conclusion of the jury charge, to the judge's failure to give an instruction on the actual malice standard.[1]

As provided by the Massachusetts Rules of Civil Procedure,

---

[1]The defendant also filed a motion for a new trial that was denied by a margin indorsement. The defendant has appealed from the denial. With the exception of his claim that the damage award was excessive, however, all of

"[n]o party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974). The primary purpose of the rule is to put the judge on notice of the issue, and the requirements of the rule may be satisfied in a variety of ways. See *Flood* v. *Southland Corp.*, 416 Mass. 62, 66-67 (1993) (rejecting "hard and fast approach" of United States Court of Appeals for the First Circuit, which requires, under similar Federal rule, that all relevant events occur after charge is given), and cases discussed. A party objecting to the inclusion or exclusion of an instruction must, however, clearly bring the objection and the grounds for it to the attention of the judge. See *id.*

In this case, at the close of the plaintiff's evidence, and in response to the judge's query regarding whether there was a question on the plaintiff's status as a public official,[2] the defendant orally requested that the jury be given an instruction on public officials. Immediately before closing arguments began, the judge called counsel to sidebar and informed them, in essence, that he was finding the plaintiff was not a public official and therefore would not give that instruction. The judge also noted defense counsel's objection. The defendant did not renew his objection at the end of the jury charge.

In order to preserve the issue for appellate review, the better practice would have been for defense counsel to renew the objection, with specificity, at the end of the charge. See *id.* at 67. The judge did, however, acknowledge his awareness of the issue, explicitly ruled on it, and expressed his intention not to

---

the grounds advanced in the motion for a new trial, including the failure to instruct on the public official standard, were or could have been raised during the trial. See *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 345 (1972) (if error of law claimed as basis in motion for new trial could have been raised during trial, judge may not be compelled to examine issue on its merits, but may do so in discretion). Further, the judge's cursory denial of the motion does not indicate that he considered, on their merits, the issues that could have been raised. See *Bartley* v. *Phillips*, 317 Mass. 35, 39 (1944) (bare denial of motion for new trial does not indicate judge considered merits of claims). We therefore do not consider the issues argued in the motion for a new trial, which could have been raised at trial, to be before us based on the appeal of the denial of that motion.

[2] The judge and both counsel interchangeably used the phrases "public official" and "public figure." For clarity and consistency, we use only "public official."

instruct as requested. Further, the judge expressly noted the defendant's objection to the ruling. In these circumstances, we conclude that the requirements of the rule have been met. See *id.* at 67 (stating that there can be circumstances under which no postcharge objection is required). Cf. *Commonwealth* v. *Grenier*, 415 Mass. 680, 686 (1993) (defendant's appellate rights properly saved where judge denied written request for jury instruction during charge conference and stated that defendant's exception was saved; defendant not required to repeat objection after charge was given). The issue is therefore preserved.[3]

3. *Police officer's status as a public official.* Recognizing the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" and acknowledging that the Constitution protects such debate even when it includes "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials," the landmark case, *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 270-271, 279-280 (1964), established that a public official could not recover for "a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." We have not had the opportunity to rule on the question whether a patrol-level police officer qualifies as a public official. See *Fleming* v. *Benzaquin*, 390 Mass. 175, 189 (1983) (noting that the "weight of authority leans toward classifying police officers as public officials" but declining to decide the issue). We conclude, because of the broad powers vested in police officers and the great potential for abuse of those powers, as well as police officers' high visibility within and impact on a community, that police officers, even patrol-level police officers such as the plaintiff, are "public officials" for purposes of defamation.[4]

One of the major factors in determining whether a govern-

---

[3]If the defendant had not preserved the issue, we would be limited to reviewing the claimed error only to prevent a manifest injustice. See, e.g., See *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107, 111 (1985); *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6, 9 (1983).

[4]Although not raised at trial, the defendant also attempts to raise a claim under the petition clause of the First Amendment to the United States Constitution. Because we decide this case on other, preserved, grounds, we do not reach this issue. We do note that "there is no sound basis for granting greater constitutional protection to statements made in a petition [to the government] than other First Amendment expressions," *McDonald,* v. *Smith*, 472 U.S. 479,

ment employee is a public official for purposes of defamation is whether the employee's position in government "has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general interest in the qualifications and performance of all government employees . . . ." *Rosenblatt* v. *Baer*, 383 U.S. 75, 86 (1966). "The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Id.* at 86-87 n.13. Some of the other relevant considerations in making a determination regarding public official status are the government employee's ability to set policy guidelines that are of importance to public debate, see *id.* at 85; the impact of the government position on everyday life; the potential for social harm from abuse of the government position; as well as the employee's access to the press. See *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 344 (1974). See also *Rosenblatt* v. *Baer, supra* at 88 (public official status is determined as matter of law); *Materia* v. *Huff*, 394 Mass. 328, 330-331 (1985). Past application of these factors makes it clear that not every government employee is a public official for purposes of a defamation action. See, e.g., *Hutchinson* v. *Proxmire*, 443 U.S. 111, 135-136 (1979) (receipt of Federal grant did not make scientist a public official or public figure); *Gertz* v. *Robert Welch, Inc., supra* at 351 (attorney not "public official" although officer of the court); *McAvoy* v. *Shufrin*, 401 Mass. 593, 596 n.3 (1988) (expressing doubt that constable in private employ is public official).

Law enforcement officials, from a chief of police to a patrol officer, necessarily exercise State power in the performance of their duties. All police officers are empowered to further the preservation of law and order in the community, including the investigation of wrongdoing and the arrest of suspected criminals. Even patrol-level police officers are "vested with substantial responsibility for the safety and welfare of the citizenry in areas impinging most directly and intimately on daily living: the home, the place of work and of recreation, the sidewalks and streets." *Roche* v. *Egan*, 433 A.2d 757, 762 (Me. 1981). Further, although a patrol officer such as the plaintiff is "low on the totem pole" and does not set policy for the depart-

485 (1984), nor does the defendant claim any greater protection. See *McAvoy* v. *Shufrin*, 401 Mass. 593, 600 (1988); *Commonwealth* v. *Clap*, 4 Mass. 163, 169 (1808).

ment, abuse of the office "can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss." *Gray* v. *Udervitz*, 656 F.2d 588, 591 (10th Cir. 1981). All police officers have the ability and authority to exercise force. See *Roche* v. *Egan*, *supra* at 762 ("The nature and extent of the responsibility of a police detective is punctuated by the fact that a firearm, no less than a badge, comes with his [or her] office"). We conclude, in line with the vast majority of other jurisdictions,[5] that "[t]he abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the performance of that office cannot constitutionally be inhibited by threat of prosecution under State libel laws." *Coursey* v. *Greater Niles Township Publ. Co.*, 40 Ill. 2d 257, 265 (1968). The rule we now articulate strikes an appropriate balance between the individual's and society's interests in protecting reputation with society's interest in freedom of speech and expression. As recognized in *New York Times Co.* v. *Sullivan*, *supra* at 271-272, "erroneous statement is inevitable in free debate, and . . . [such statement] must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.' "

---

[5]*Turner* v. *Devlin*, 174 Ariz. 201, 205 & n.8 (1993) (police officer a public official); *Gomes* v. *Fried*, 136 Cal. App. 3d 924, 934 (1982); *Moriarty* v. *Lippe*, 162 Conn. 371, 377-378 (1972) (patrol officer); *Jackson* v. *Filliben*, 281 A.2d 604, 605 (Del. 1971) (police sergeant); *Smith* v. *Russell*, 456 So. 2d 462, 464 (Fla. 1984), cert. denied, 470 U.S. 1027 (1985) (police officer); *Coursey* v. *Greater Niles Township Publ. Co.*, 40 Ill. 2d 257, 258 (1968) (patrol officer); *Rawlins* v. *Hutchinson Publ. Co.*, 218 Kan. 295, 297 (1975) (former police officer); *Roche* v. *Egan*, 433 A.2d 757, 762 (Me. 1981) (all law enforcement personnel, including police detective); *Hirman* v. *Rogers*, 257 N.W.2d 563, 564, 566 (Minn. 1977) (police officers); *National Ass'n for the Advancement of Colored People* v. *Moody*, 350 So. 2d 1365, 1366 (Miss. 1977) (highway patrol officer); *Malerba* v. *Newsday Inc.*, 64 A.D.2d 623, 624 (N.Y. 1978) (patrolman); *Colombo* v. *Times-Argus Ass'n*, 135 Vt. 454, 456-457 (1977) (police officer); *Starr* v. *Beckley Newspapers Corp.*, 157 W. Va. 447, 451 (1974) (police sergeant). But see *Nash* v. *Keene*, 127 N.H. 214, 222 (1985) (leaving determination whether police officer was public official as a question to be determined by jury); *Himango* v. *Prime Time Broadcasting*, 37 Wash. App. 259 (1984).

The United States Supreme Court cases appear to conclude similarly. See *Time, Inc.* v. *Pape*, 401 U.S. 279, 284 (1971) (deputy chief of detectives and lieutenant are public officials); *St. Amant* v. *Thompson*, 390 U.S. 727, 729 (1968) (deputy sheriff); *Henry* v. *Collins*, 380 U.S. 356, 357 (1965) (chief of police).

As *New York Times Co.* v. *Sullivan* and subsequent cases have made clear, a plaintiff who is a public official may not recover damages for defamation related to his or her public office unless the plaintiff proves by clear and convincing evidence that the defendant made the false statement with actual malice. See *New York Times Co.* v. *Sullivan, supra* at 279-280; *Bose Corp.* v. *Consumers Union of the U.S., Inc.*, 466 U.S. 485, 502 (1984); *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 851 (1975). In the context of defamation, the term "actual malice" does not mean the defendant's dislike of, hatred of, or ill will toward, the plaintiff. Rather, actual malice means that the "defamatory falsehood was published with knowledge that it was false or reckless disregard of whether it was false." *Stone* v. *Essex County Newspapers, supra* at 867. See *Cantrell* v. *Forest City Publ. Co.*, 419 U.S. 245, 252 (1974); *Beckley Newspapers* v. *Hanks*, 389 U.S. 81, 82 (1967). The inquiry is a subjective one as to the defendant's attitude toward the truth or falsity of the statement rather than the defendant's attitude toward the plaintiff. See *Cantrell* v. *Forest City Publ. Co., supra* at 252.

Because the plaintiff was a public official for purposes of this defamation action, the jury should have been instructed that they were required to find that the defendant acted with actual malice before they could hold him liable. Accordingly, we reverse and remand for a new trial on the defamation claims. Similarly, because a plaintiff who is a public official must prove that a defendant acted with actual malice in order to recover damages for intentional infliction of emotional distress claims that arise from the defamation, see *Hustler Magazine* v. *Falwell*, 485 U.S. 46, 56 (1988), we reverse and remand the plaintiff's intentional infliction of emotional distress claim for a new trial.[6]

4. *Issues likely to recur on remand.* On appeal, the defendant argues several issues that were not preserved.[7] As the defendant is entitled to a new trial on the above grounds, we discuss issues that may arise on retrial.

---

[6]The defendant also argues that the damage award was excessive and duplicative. Although the issue is properly before us, see note 1, *infra*, we do not reach it because we are remanding the case for a new trial on liability and damages.

[7]The issues were not preserved because the defendant's trial counsel failed to file a motion to dismiss; renew the motion for a directed verdict at the close of all the evidence; move for judgment notwithstanding the verdict; and to object to other substantial errors in the jury charge.

First, many of the statements made by the defendant to the board, were, as a matter of law, not actionable, either because they were true, or because they were subjective statements of opinion, and as such were not susceptible of being proven false. See *Cole* v. *Westinghouse Broadcasting Co.*, 386 Mass. 303, 312, cert. denied, 459 U.S. 1037 (1982). Further, the bull's-eye that the defendant wore on his jacket to the board meetings and around the town of Deerfield was a classic example of symbolic speech, and is therefore not actionable as slander. See, e.g., *Cohen* v. *California*, 403 U.S. 15 (1971) (wearing jacket with expletive sign on its back as protest); *Tinker* v. *Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 508 (1969) (wearing black armband symbolic of protest). See also *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 708, cert. denied, 485 U.S. 940 & 961 (1987), citing *Appleby* v. *Daily Hampshire Gazette*, 395 Mass. 32, 37 (1985).

Finally, we note that the judge gave an instruction based on G. L. c. 231, § 92. In view of our decisions, application of that statute to public officials is unconstitutional and the instruction should not have been given. See *Shaari* v. *Harvard Student Agencies, Inc.*, 427 Mass. 129, 134 (1998); *Materia* v. *Huff*, 394 Mass. 328, 333 (1985).

*Judgment reversed.*