NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-780                                        Appeals Court

       PETER AGNITTI[1]  vs.  PHILIP MORRIS USA INC. & others.[2]


                       No. 24-P-780.

       Middlesex.    December 4, 2025. – March 13, 2026.

             Present:  Blake, C.J., Hand, & Toone, JJ.


Tobacco.  Negligence, Sale of cigarettes, Defective product,
     Design, Manufacturer, Misrepresentation.  Conspiracy.
     Fraud.  Wrongful Death.  Consumer Protection Act, Sale of
     cigarettes, Unfair or deceptive act.  Practice, Civil,
     Wrongful death, Objections to jury instructions, Requests
     for instructions.



     Civil action commenced in the Superior Court Department on
March 27, 2020.

     The case was tried before Camille F. Sarrouf, Jr., J.


     Celene H. Humphries, of Florida, for the plaintiff.
     Scott A. Chesin for Philip Morris USA Inc.


_____

     [1] Individually and as personal representative of the estate
of Lorna Agnitti.

     [2] R.J. Reynolds Tobacco Company and Cumberland Farms, Inc.

TOONE, J.  The plaintiff, Peter Agnitti, individually and as personal representative of the estate of his wife, Lorna Agnitti (Lorna), appeals from a judgment entered in the Superior Court on a jury verdict for the defendant, Philip Morris USA Inc. (Philip Morris).  The plaintiff does not challenge the judgment insofar as it was entered for the other defendants: R.J. Reynolds Tobacco Company and Cumberland Farms, Inc.

Born in 1957, Lorna smoked her first cigarette when she was approximately ten years old.  Over the next fifty years, she primarily smoked Philip Morris brands of cigarettes:  Marlboro and Marlboro Lights.  In 2019, Lorna was diagnosed with lung cancer.  She and the plaintiff commenced this action the next year.  They initially asserted six claims against one or more of the defendants:  (i) breach of the implied warranty of merchantability based on design defect; (ii) negligence; (iii) civil conspiracy to commit fraud and misrepresentation; (iv) fraud and misrepresentation; (v) violations of the Consumer Protection Act, G. L. c. 93A, §§ 2, 9; and (vi) loss of consortium.  After Lorna died in September 2022, the plaintiff amended the complaint, adding a claim for wrongful death pursuant to G. L. c. 229, § 2.

All of the claims were tried before a jury, including the c. 93A claim at the request of the parties.  See Governo Law Firm LLC v. Bergeron, 487 Mass. 188, 193 n.11 (2021).  After a

twenty-day trial, the jury found in favor of the defendants on all claims.  On appeal, the plaintiff challenges the jury instructions on two of the claims:  violation of c. 93A and fraud and misrepresentation.  We vacate and set aside so much of the judgment entered in favor of Philip Morris as to the violation of c. 93A, and remand the matter.  We affirm the remainder of the judgment.

Discussion.  1.  Preservation of objections.  We must first determine whether the plaintiff preserved his objections to the two instructions.  "As provided by the Massachusetts Rules of Civil Procedure, '[n]o party may assign as error the giving or failure to give an instruction unless [the party] objects thereto before the jury retires to consider [their] verdict, stating distinctly the matter to which [the party] objects and the grounds of [the] objection.'"  Rotkiewicz v. Sadowsky, 431 Mass. 748, 750-751 (2000), quoting Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974) (rule 51 [b]).  The requirements of rule 51 (b) are satisfied where a "party objects after the charge was given and explains the significance of the request."  Flood v. Southland Corp., 416 Mass. 62, 66 (1993).  Even after a party objects to an instruction at the charge conference, rule 51 (b) requires the party to renew that objection after the charge. Id. at 66-67.  The postcharge objection should be made "with specificity"; counsel "proceeds at considerable peril in

objecting to a jury charge simply by reference to discussions had, and rulings made, during a charge conference." Id.

Here, before the judge charged the jury in this case, counsel for Philip Morris stated, "I assume Your Honor does not want us to come to the sidebar after you read the instructions and reassert all of the objections we made, both in writing and at the charge conference." We note that attorneys should not assume they do not need to reassert their objections after the charge, since that, as discussed, is what rule 51 (b) requires. See Rotkiewicz, 431 Mass. at 750-751. Nevertheless, "[t]he primary purpose of the rule is to put the judge on notice of the issue, and the requirements of the rule may be satisfied in a variety of ways." Id. at 751, citing Flood, 416 Mass. at 66-67. That includes situations where the judge acknowledges a party's objection, rules on it, and makes clear that the party need not repeat the objection after the charge was given. See Rotkiewicz, supra at 751-752, citing Commonwealth v. Grenier, 415 Mass. 680, 686 (1993). See also Flood, supra at 67. Here, after counsel conveyed his assumption to the judge, the judge responded, "I can acknowledge the fact that both parties have lodged their objections with regard to the jury instructions as read." In light of this exchange, we are satisfied that any prior objections to the instructions met the requirements of rule 51 (b).

The question, then, is whether the plaintiff specifically objected to the instructions he challenges now. We conclude that he did so with respect to the instruction on c. 93A. The judge initially provided the parties with draft jury instructions, based on those used in an earlier cigarette manufacturer liability case that went to trial. The plaintiff and defendants jointly submitted a jury instruction worksheet in which the parties proposed changes to that draft, including what defendants' counsel characterized as "[d]ueling proposals" on the c. 93A instruction. At the charge conference, the defendants argued for their proposed instruction, under which the jury could find a c. 93A violation only if they found for the plaintiff on one of his tort claims. In response, the plaintiff contended that his c. 93A claim was not so limited and that its elements differed from those of his other claims. The judge ultimately gave the instruction proposed by the defendants. The plaintiff thus "clearly [brought his] objection and the grounds for it to the attention of the judge." Rotkiewicz, 431 Mass. at 751. See Martignetti v. Haigh-Farr Inc., 425 Mass. 294, 299 n.10 (1997) (objection preserved where defendant explained disagreement with proposed instruction at charge conference, requested alternative instructions, and stated objection at bench conference immediately following charge to jury before jury retired).

In contrast, although the plaintiff also challenges on appeal the judge's failure to instruct the jury that "half-truths" are actionable in a claim for fraud and misrepresentation, the plaintiff did not object to that failure at trial. In the joint instruction worksheet, the plaintiff proposed numerous edits to the draft proposal that would have made both omissions and half-truths actionable. The edits included a paragraph that, in addition to addressing material omissions, stated that the defendants "can be held responsible not only for outright untrue statements that they made . . . , but also for giving misleading partial information or for telling half-truths." At the charge conference, the plaintiff's counsel told the judge that "[e]verywhere you see a discussion of omissions, that's all requested," but then stated that, because the judge had rejected the same proposed language at the earlier cigarette manufacturer liability trial, "we don't have to discuss every one of them." After the defendants objected, the judge indicated that none of the proposed edits would be incorporated, and the plaintiff did not object to their exclusion at either the charge conference or trial.

The plaintiff failed to preserve this issue for our review. "When no objection is taken to the failure of a judge to give an instruction, and the attention of the judge is not called to the matter, such failure cannot be raised on appeal." Karen Constr.

Co. v. Lizotte, 396 Mass. 143, 149 (1985). See Flood, 416 Mass. at 67. The plaintiff's failure to object to the instruction given was compounded by his failure to specifically argue for an instruction on half-truths at the charge conference. With claims for fraud and misrepresentation, Massachusetts courts distinguish between "bare nondisclosure," which is not actionable, and half-truths, which "may be as actionable as whole lies." Kannavos v. Annino, 356 Mass. 42, 48 (1969). See Sullivan v. Five Acres Realty Trust, 487 Mass. 64, 73-75 (2021). The plaintiff did not mention half-truths at the charge conference and instead focused on expanding the fraud and misrepresentation claim to include liability for omissions, even while acknowledging that the judge had rejected that request in the earlier cigarette manufacturer liability case. His presentation failed to "inform[] the judge why the requested instruction" on half-truths "should have been given" or "give him reason to believe his charge was incorrect." MacCuish v. Volkswagenwerk A.G., 22 Mass. App. Ct. 380, 397 (1986), S.C., 400 Mass. 1003 (1987).

We emphasize that objections are required so that trial judges may correct instructional errors before the jury begin their deliberations. Here, the record shows that the judge may well have instructed the jury on half-truths in connection with the claim for fraud and misrepresentation, had the plaintiff

called his attention to that issue.  See Flood, 416 Mass. at 66.
In connection with the plaintiff's claim for civil conspiracy,
the judge instructed the jury that Philip Morris could be "held
responsible, not only for outright untrue statements that they
made . . . , but also for giving misleading, partial information
or for telling half truths."  The judge included that language
as to the claim for civil conspiracy in his initial draft of the
jury instructions, and neither party objected to it.

2.  Instruction on G. L. c. 93A.  As the plaintiff
preserved his objection to the c. 93A jury instruction, we
review the instruction "to determine if there was any error and,
if so, whether the error affected the substantial rights of the
objecting party."  Luppold v. Hanlon, 495 Mass. 148, 158 (2025),
quoting Dos Santos v. Coleta, 465 Mass. 148, 153-154 (2013).
"[A] judge enjoys significant latitude in framing the language
of [their] jury instructions and is not required to use the
specific language requested by a party" (citations omitted).
Grant v. Lewis/Boyle, Inc., 408 Mass. 269, 275 (1990).  As long
as all significant matters are covered, the judge need not
include "[e]very possible correct statement of law" in the
charge (citation omitted).  Hopkins v. Medeiros, 48 Mass. App.
Ct. 600, 611 (2000).  Still, the judge must "give full, fair,
correct and clear instructions as to the principles of law
governing all the essential issues presented" (citation

omitted).  Id.  "When reviewing jury instructions, an 'appellate court considers the adequacy of the instructions as a whole, not by fragments.'"  Doull v. Foster, 487 Mass. 1, 6 (2021), quoting DaPrato v. Massachusetts Water Resources Auth., 482 Mass. 375, 383 n.11 (2019).

The plaintiff contends that the judge erred in instructing the jury that, to find for the plaintiff on his c. 93A claim, they had to find the defendants liable on one of the tort claims for breach of warranty, fraud and misrepresentation, negligence, or civil conspiracy.[3]  We agree that was error.

"[A] cause of action under c. 93A is 'not dependent on traditional tort or contract law concepts for its definition.'"  Kattar v. Demoulas, 433 Mass. 1, 13 (2000), quoting Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 626 (1978).  Rather, a c. 93A claim is "sui generis[,] neither wholly tortious nor wholly contractual in nature, and . . . not subject to the traditional limitations of preexisting causes of action such as

---

[3] The judge instructed the jury that, to prevail on his c. 93A claim, the plaintiff had to prove:  "1:  That the defendants were liable for the claims of breach of warranty and/or fraud and misrepresentation and/or negligence and/or civil conspiracy as defined by [the judge's] instructions herein while acting in trade and commerce after October 18, 1979, and during the time when Lorna Agnitti was buying and smoking cigarettes.  And those acts were unfair and deceptive.  And 2:  That this unfair or deceptive conduct was a cause of Lorna Agnitti's cancer."

tort for fraud and deceit." Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975). See H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 24 (2022); Nei v. Burley, 388 Mass. 307, 312-313 (1983).

It is true that, where a c. 93A claim and a tort claim are based on the same "theory of injury" and the same set of facts, a court may conclude that the former claim fails for the same reason as the latter. Iannacchino v. Ford Motor Co., 451 Mass. 623, 634-636 (2008). Courts have done so in narrow circumstances -- at the pleading stage when no independent unfair or deceptive conduct is alleged beyond the underlying tort claim, or after a trial when the evidence failed to establish any improper conduct on which a derivative c. 93A claim could rest. See id. at 635 (reasons calling for dismissal of c. 93A claim also justified dismissal of implied warranty claim because they "survive or fail under the same analysis"); Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 40 (2004) (reversing judgment on c. 93A claim that was "wholly derivative" of tortious interference claim for which there was insufficient evidence of improper motive or means at trial). Cf. Donovan v. Philip Morris USA, Inc., 455 Mass. 215, 227 n.13 (2009) (determination that negligent design claim was cognizable under Massachusetts law "similarly resolves the claims for breach of warranty and violations of G. L.

c. 93A"). Here, the plaintiff concedes that part of his c. 93A claim was derivative of his claim for breach of the implied warranty of merchantability, for which the jury found in the defendants' favor.

Other parts of the c. 93A claim, however, were not derivative. The plaintiff alleged that the defendants violated c. 93A, § 2, by making false and misleading representations concerning the safety and addictiveness of their products. As the plaintiff's counsel explained at the charge conference, the standard for liability under c. 93A differs from that for fraud and misrepresentation. Indeed, "a claim under c. 93A 'goes far beyond the scope of the common law action for fraud.'" Macoviak v. Chase Home Mtge. Corp., 40 Mass. App. Ct. 755, 760 (1996), quoting Slaney, 366 Mass. at 703. To prevail on a claim for fraud and misrepresentation, a plaintiff "must show the defendant (1) made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act on this representation, (4) which the plaintiff justifiably relied on as being true, to her detriment" (citation omitted). Sullivan, 487 Mass. at 73. By contrast, a c. 93A claim based on deceptive acts or practices does not require proof that the plaintiff relied on the representation, or that the defendant knew the representation was false and intended to deceive the plaintiff. Iannacchino,

451 Mass. at 630 n.12.  Swanson v. Bankers Life Co., 389 Mass. 345, 349 (1983).  Slaney, supra.[4]  Furthermore, even a statement that is "true as a literal matter" can violate c. 93A if it creates "an over-all misleading impression through failure to disclose material information" (citation omitted).  Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 320 (2018), cert. denied sub nom. Exxon Mobil Corp. v. Healey, 586 U.S. 1069 (2019).  For these reasons, the plaintiff's c. 93A claim was not "legally intertwined," Iannacchino, supra at 635, with the fraud and misrepresentation claim such that the jury's failure to find liability on the latter (or any other tort claim) precluded liability under c. 93A.

---

[4] To recover damages under c. 93A, the plaintiff must show "a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 503 (2011), quoting Iannacchino, 451 Mass. at 630 n.12.  See Greene v. Philip Morris USA Inc., 491 Mass. 866, 878-879 (2023).  We reject Philip Morris's suggestion that "causation and reliance merge" in personal injury or wrongful death cases like this one. Causation is not the same as reliance, and "the latter is not an essential element of a G. L. c. 93A claim."  Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 800 n.20 (2006).  Compare Greene, supra at 873 ("plaintiffs seeking to prove reliance [as an element of fraudulent misrepresentation] must do more than introduce evidence that falsehoods were in the air, however pervasively," but rather must prove "that they themselves relied on those falsehoods"), with id. at 878-879 (upholding liability under c. 93A where trial judge found "causal link" between Philip Morris's deceptive marketing of Marlboro Lights and plaintiff's continued smoking and cancer).

Nor can we say that there was no "evidentiary basis" for the c. 93A instruction requested by the plaintiff. Aceto v. Dougherty, 415 Mass. 654, 659 (1993). Cf. Dalton v. Post Publ. Co., 328 Mass. 595, 598-599 (1952) ("A judge is required to submit to a jury only the issues which the parties have seen fit to try"). At trial, the plaintiff contended that the defendants engaged in "unfair or deceptive practices while selling their products." He presented evidence that, after scientific studies in the 1950s showed a link between cigarette smoking and lung cancer, cigarette sales dropped for the first time since the Great Depression, and, in response, Philip Morris and other tobacco companies developed a public relations campaign intended to cast doubt on whether cigarettes caused lung cancer. The companies established and funded organizations to perpetuate the false notion that there was a scientific controversy about the health risks of cigarette smoking. They also denied that nicotine, the main active ingredient in tobacco, was addictive, even after the Surgeon General reported it was in 1988, and even though the companies had studied what levels of nicotine were necessary to create and sustain addiction. Finally, Philip Morris promoted "filtered," "light," and "low tar" cigarettes as healthier alternatives to regular cigarettes, despite knowing that these products were not safer.

In light of this evidence, we conclude that the plaintiff made "a plausible showing that the jury might have reached a different result absent the erroneous instruction." Main v. R.J. Reynolds Tobacco Co., 100 Mass. App. Ct. 827, 837 (2022), citing Campbell v. Cape & Islands Healthcare Servs., Inc., 81 Mass. App. Ct. 252, 258 (2012). The judge's instruction effectively precluded a finding of liability under c. 93A unless the jury also found liability under the more restrictive standard for fraud and misrepresentation. That "unduly narrowed" the issue for the jury to consider. Blackstone v. Cashman, 448 Mass. 255, 270 (2007). Instead of determining whether Philip Morris conveyed an "over-all misleading impression" about its cigarette products and associated risks and, if so, whether that unfair or deceptive conduct caused Lorna harm, see Exxon Mobil Corp., 479 Mass. at 320; Casavant, 460 Mass. at 503, the jury could only consider whether Philip Morris knowingly made a false representation of material fact with the intent to induce her reliance, see Sullivan, 487 Mass. at 73. "Where the jury may have based their verdict on the erroneous instruction, the error was prejudicial." FTI, LLC v. Duffy, 104 Mass. App. Ct. 484, 496 (2024).

Lastly, we reject Philip Morris's argument that the phrasing of the c. 93A claim on the verdict form rendered any error in the jury instruction harmless. Under the heading

"Unfair or Deceptive Conduct," the form asked, "Did any of the defendants commit an unfair or deceptive act or practice after October 18, 1979, by manufacturing, distributing, or selling Marlboro, Marlboro Light, and/or Winston brand cigarettes[?]" Philip Morris contends that "[t]he court's instructions about Plaintiff's need to prove a common-law claim had no bearing on this factual question," but we are not persuaded. Each heading on the form referred to the claims advanced by the plaintiff, and we presume that the jury followed the instruction they were given on the c. 93A claim for which this question was posed. A new trial on the claim is therefore warranted. See Governo Law Firm LLC, 487 Mass. at 197.[5],[6]

Conclusion. So much of the judgment as entered in favor of Philip Morris on the claim for violation of G. L. c. 93A is

_____

[5] We do not address Philip Morris's argument that the plaintiff's c. 93A claim did not survive Lorna's death, because it did not make that argument in the Superior Court. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

[6] Philip Morris's request for costs is denied. The plaintiff's request for appellate attorney's fees is denied without prejudice as premature as there is not a prevailing party. See G. L. c. 93A, § 9 (4). Cf. Brown v. F.L. Roberts & Co., 452 Mass. 674, 689 (2008); T & D Video, Inc. v. Revere, 450 Mass. 107, 115-117 (2007). If, after remand, judgment is granted in favor of the plaintiff on his c. 93A claim, the plaintiff shall be awarded reasonable attorney's fees under that statute. Attorney's fees attributable to this appeal and any proceedings after remand may be included in the award. See Connor v. Marriott Int'l, Inc., 103 Mass. App. Ct. 828, 837 n.9 (2024).

vacated and set aside, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.  The judgment is otherwise affirmed.

<u>So ordered</u>.